[No. 80518-1.   En Banc.]
Argued May 29, 2008.    Decided October 22, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL J. PATTON, *Petitioner*.

---

*George A. Kolin*, for petitioner.

*Peter S. Banks, Prosecuting Attorney*, for respondent.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1 STEPHENS, J. — This case asks us to determine the validity of an automobile search under the "incident to arrest" exception to the general warrant requirement of article I, section 7 of the Washington State Constitution. Sheriff's deputies attempted to effectuate an arrest warrant for Randall J. Patton while he stood in his driveway next to his parked car with his head in the window. When told he was under arrest, Patton fled from the car into his home, where law enforcement officers physically detained him. They subsequently searched his car. The trial court found the search invalid as a search incident to arrest because police did not physically detain Patton while he stood next to his car. The Court of Appeals reversed, finding Patton was arrested next to his automobile and, therefore, the search of his car was valid incident to his arrest. Though we agree Patton was under arrest while he stood

next to his car, the search incident to arrest exception requires a nexus between the arrestee, the vehicle, and the crime of arrest, implicating safety concerns or concern for the destruction of evidence of the crime of arrest. Because no such nexus existed here, we reverse the Court of Appeals. We hold that an automobile search incident to arrest is not justified unless the arrestee is within reaching distance of the passenger compartment at the time of the search, and the search is necessary for officer safety or to secure evidence of the crime of arrest that could be concealed or destroyed.[1]

## FACTS

¶2 The underlying facts are set forth in the unchallenged findings of fact determined at the hearing on Patton's motion to suppress evidence. On March 19, 2005, Skamania County Sheriff Deputy Tim Converse was watching Patton's trailer in the hope of locating Patton to arrest him on an outstanding felony warrant. He ran the license on a blue Chevy parked in the driveway and confirmed that the car belonged to Patton. Deputy Converse called for backup.

¶3 After waiting a short time, Deputy Converse saw the dome light illuminate in the parked car and saw someone generally fitting Patton's description "rummaging around" inside the car. Clerk's Papers (CP) at 16. Concerned the person might try to drive away, Deputy Converse activated his lights and pulled into the driveway behind the car. He approached Patton, announced that he was under arrest, and ordered him to put his hands behind his back. Patton, who still had his head inside the car when Deputy Converse spoke, stood up and ran inside the trailer. He did not respond to the deputy's verbal commands to exit the trailer.

¶4 After two other backup deputies arrived, they entered the trailer and found Patton hiding behind a bedroom door.

---

[1] Subsequent to our hearing oral argument in this case, the United States Supreme Court issued its decision in *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), articulating a similar rule under the Fourth Amendment to the United States Constitution. *Gant* is discussed below.

Patton was taken into custody, handcuffed, and placed in the back of Deputy Converse's patrol car. The deputies then searched Patton's vehicle, where they found two baggies of methamphetamine and $122 cash under the driver's seat.[2]

¶5 The State charged Patton with one count of unlawful possession of methamphetamine and one count of resisting arrest. Patton moved under CrR 3.6 to suppress the evidence obtained from his vehicle. The trial court granted the motion, concluding that the search was not incident to arrest because Patton was not arrested until he was taken into physical custody in the trailer. The State appealed, arguing the arrest occurred beside the car and therefore the search was valid incident to the arrest. The Court of Appeals agreed and reversed the trial court. We granted Patton's petition for review to address whether the search incident to arrest exception applies in these circumstances.

## ANALYSIS

¶6 Patton claims the search of his car violated his rights under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. When a party claims both state and federal constitutional violations, we turn first to our state constitution. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).[3] Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." We have specifically recognized that Washington State citizens hold a constitutionally protected privacy interest in their automobiles and the contents therein. *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999); *State v. Gibbons*, 118 Wash. 171, 187-88, 203 P. 390 (1922).

---

[2] The record does not reflect whether the sheriff's deputies also searched Patton's home or whether Patton challenged the entry into his home.

[3] The concurrence disregards this principle when it suggests that "[t]he United States Supreme Court has decided this case for us" in *Gant*. Concurrence at 396. Whatever that Court's interpretation of the Fourth Amendment may be, it remains for this court to independently interpret our state constitution and doing so can hardly be dismissed as "dicta." *Id.* at 397.

¶7 Our analysis under article I, section 7 begins with the presumption that a warrantless search is per se unreasonable, unless it falls within one of the carefully drawn exceptions to the warrant requirement. These exceptions are limited by the reasons that brought them into existence; they are not devices to undermine the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 356, 979 P.2d 833 (1999).

¶8 One such exception, and the one at issue here, is the automobile search incident to arrest exception.[4] Officer safety and the risk of destruction of evidence of the crime of arrest are the reasons that brought this exception into existence. *State v. Ringer*, 100 Wn.2d 686, 693-700, 674 P.2d 1240 (1983) (reviewing historical development of search incident to arrest exception under federal and state law). Necessarily, these factors—also described as exigencies—limit the scope of the exception.[5] Like all judicially created exceptions, the automobile search incident to arrest exception is limited and narrowly drawn, and it is the State's burden to establish that it applies. *Parker*, 139 Wn.2d at 496.

¶9 The focus of Patton's argument is that the search of his vehicle was not valid incident to his arrest because he was not arrested until the sheriff's deputies took him into physical custody inside the trailer. He also argues that the arrest here had no connection to the car and was merely used "to bootstrap a search of the automobile and its contents." Br. of Resp't at 12. Patton is supported by amicus curiae, American Civil Liberties Union of Washington, which urges us to reexamine our decision in *State v. Stroud*,

---

[4] This exception is a specific application of the search incident to arrest exception where the area to be searched includes an automobile. It should not be confused with so-called "automobile exception" recognized under the Fourth Amendment but not article I, section 7, which allows a warrantless search of an automobile and all containers therein based upon probable cause. *See United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). The State makes no argument that it had probable cause to search Patton's car.

[5] Although these factors are also described as exigencies, the search incident to arrest exception should be distinguished from the exigent circumstances exception to the warrant requirement. *See Ladson*, 138 Wn.2d at 349.

106 Wn.2d 144, 720 P.2d 436 (1986) (plurality opinion), and limit the search incident to arrest exception. We address separately the questions of when Patton was arrested and whether the subsequent search falls within the narrow exceptions we have recognized.

*When Was Patton Arrested?*

¶10 The trial court concluded Patton was not arrested until he was placed under physical control in the trailer. We disagree. "An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person. The existence of an arrest depends in each case upon an objective evaluation of all the surrounding circumstances." 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3104, at 741 (3d ed. 2004) (footnote omitted).[6]

¶11 Although Patton was not physically restrained until the police caught up with him in the trailer, Deputy Converse pulled into the driveway behind Patton's car with his lights activated. He immediately approached Patton, told him he was under arrest, and to put his hands behind his back. Under an objective evaluation of all the surrounding circumstances, an arrest occurred. The fact that Patton chose to flee does not undermine the validity of the arrest.

¶12 We have seen recently a number of Court of Appeals cases in which a suspect flees from a car prior to being arrested, and the question arises whether a subsequent search of the car is valid incident to the arrest. *State v. Adams*, 146 Wn. App. 595, 191 P.3d 93 (2008); *State v. Quinlivan*, 142 Wn. App. 960, 176 P.3d 605 (2008); *State v. Rathbun*, 124 Wn. App. 372, 101 P.3d 119 (2004); *State v.*

---

[6] The Court of Appeals suggested that, when an arresting officer has explicitly informed the suspect he is under arrest, consideration of the other factors indicating arrest is "superfluous." *State v. Patton*, noted at 137 Wn. App. 1061, 2007 WL 1064439, at *2 n.3, 2007 Wash. App. LEXIS 661, at *6 n.3. Whether an officer informs the defendant he is under arrest is only one of all of the surrounding circumstances, albeit an important one.

*Perea*, 85 Wn. App. 339, 932 P.2d 1258 (1997). In each of these cases except *Adams*, the Court of Appeals invalidated an automobile search incident to arrest because law enforcement officers did not initiate an arrest before the suspect exited and left the area of the car. *See Quinlivan*, 142 Wn. App. at 962-63 (noting no dispute over when suspect was arrested, some distance from car); *Rathbun*, 124 Wn. App. at 378-79 (distinguishing cases in which the arrestee fled from his vehicle and noting Rathbun was far from his vehicle at the time police initiated the arrest); *Perea*, 85 Wn. App. at 344-45 (noting that Perea was not arrested until after leaving and locking his car and that his actions in fleeing "[did] not diminish the lawfulness of the act of locking his car").

¶13 These cases should not be read broadly to suggest that the initiation of an arrest is ineffective so long as the fleeing suspect eludes physical restraint. To adopt Patton's argument that he was not arrested until he was chased down and restrained would send a dangerous message and jeopardize peaceable arrest. It would encourage flight as the means to avoid a search incident to arrest and concomitantly encourage greater force by law enforcement at the first moment of the arrest process to eliminate flight as an option. We have previously held that under article I, section 7, an individual cannot avoid seizure by failing to yield to a show of authority. *State v. Young*, 135 Wn.2d 498, 957 P.2d 681 (1998). We conclude the same is true of attempts to avoid arrest by fleeing instead of yielding to an officer's exercise of authority to arrest. The Court of Appeals correctly held that Patton was placed under arrest as he stood beside his car.

*Was the Search of Patton's Car Valid as a Search Incident to Arrest?*

¶14 The Court of Appeals seemed to conclude that, if Patton was under arrest at the moment he stood beside his car, the subsequent search of the car was necessarily

valid. We find the question requires greater examination, as the search incident to arrest exception is narrow and should be applied only in circumstances anchored to the justifications for its existence. A search incident to arrest cannot arise from the simple fortuity that a suspect is arrested near his car. To determine whether the exception extends to the circumstances of this case, it is helpful to review some of the history of our precedent analyzing and applying the exception.

¶15 In *Ringer*, a consolidated case with two defendants, Ringer and Cocoran, we thoroughly reviewed the history of the search incident to arrest exception in an effort to clarify its basis. 100 Wn.2d at 693-700. After police cited defendant Ringer for illegally parking his van in a rest area, they asked him to step away from his vehicle and arrested him on an outstanding felony warrant. Following the arrest, police patted down Ringer, put him in the patrol car, and then searched the vehicle. Similarly, in the companion case, police were seeking to arrest Cocoran on an outstanding felony warrant for boat theft when they saw him drive away from a private residence. Police pulled over Cocoran, arrested him and placed him in the patrol car, and then searched his vehicle.

¶16 Declaring both searches invalid, we recognized that the automobile search incident to arrest exception rests on concerns for officer safety and the potential destruction of evidence of the crime of arrest. *Id.* These concerns were not at issue at the time the officers in Ringer's and Corcoran's cases searched the vehicles. *Id.* at 700. In *Ringer*, we expressly overruled a number of prior cases that had resulted in the sort of " 'progressive distortion' " of the exception under article I, section 7 that Justice Frankfurter lamented under the Fourth Amendment in his dissent in *United States v. Rabinowitz*.[7] 100 Wn.2d at 694 (quoting Justice Frankfurt-

---

[7] 339 U.S. 56, 75, 70 S. Ct. 430, 94 L. Ed. 653 (1950), *overruled in part by Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

er's dissent), 699. We emphasized that the search incident to arrest exception must be narrowly applied, consistent with its common law origins allowing an arresting officer to search the person arrested and the area within his immediate control. *Id.* at 699 (holding that "[a] warrantless search [incident to arrest] is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested").

¶17 In *Stroud*, we refined our approach to the automobile search incident to arrest exception. 106 Wn.2d 144. There, police arrested the defendants as they were burglarizing a vending machine. While stealing money from the machine, the defendants left their car parked next to it with the car doors open, the engine running, and a gun on the back seat. We held the search of the car was related to the reason for the defendants' arrest, i.e., the burglary and the weapon. *Id.* at 153.

¶18 There was no majority opinion in *Stroud*. A four-justice lead opinion overruled part of *Ringer* to the extent it read that decision as imposing a case-by-case " 'totality of the circumstances' " analysis of whether concerns for officer safety or destruction of evidence are present at a given arrest. *Stroud*, 106 Wn.2d at 150-51 (Goodloe, J.) (quoting *Ringer*, 100 Wn.2d at 701). In an effort to provide guidance to officers in the field, the lead opinion crafted a bright line rule:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

*Id.* at 152 (Goodloe, J.). The lead opinion recognized that this rule as to the scope of a permissible search was based

on heightened privacy concerns under article I, section 7 and was more protective than the Fourth Amendment rule articulated in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). *See Stroud*, 106 Wn.2d at 148-50 (Goodloe, J.).

¶19 A four-justice concurring opinion agreed that the search in *Stroud* was valid incident to the defendants' arrest but disagreed with much of the lead opinion's reasoning, including its bright line rule. Because the ninth justice, Justice Dolliver, the author of *Ringer*, concurred in result only, the holding of *Stroud* is necessarily the narrowest ground upon which a majority agreed. *See, e.g., Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998) (noting that "[w]here there is no majority agreement as to the rationale for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds"). We subsequently described the bright line rule of *Stroud* as determining "the *scope* of a warrantless search of an automobile incident to an arrest: the police can search the contents of the passenger compartment exclusive of locked containers or locked glovebox." *State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989) (emphasis added) (citing *Stroud*, 106 Wn.2d at 152); *see also State v. Vrieling*, 144 Wn.2d 489, 492, 28 P.3d 762 (2001) (describing *Fladebo* as adopting locked container rule proposed by lead opinion in *Stroud*).[8]

---

[8] Though *Stroud* is described as having overruled part of *Ringer*, that result is not without question. As noted, there was no majority opinion in *Stroud*. Justice Durham's concurrence correctly observed that there were two discrete parts to the *Ringer* analysis: one involving the search incident to arrest exception and the other the exigent circumstances exception. *Stroud*, 106 Wn.2d at 166 (Durham, J., concurring). The case-by-case analysis rejected in *Stroud* was not adopted in *Ringer* with respect to the *search incident to arrest* exception but, rather, was a proper application of the "totality of the circumstances" analysis applicable under the *exigent circumstances* exception, where the police have probable cause to search but must show specific exigencies that justify not obtaining a warrant. *See Ringer*, 100 Wn.2d at 700 ("The question remains whether the search of Ringer's van could be justified under the so-called 'exigent circumstances' exception."). In analyzing the search incident to arrest exception, *Ringer* held that the searches at issue were invalid because they were conducted after the concerns that arise during the arrest process had passed, not because the officers failed to prove they in fact feared for their safety or loss of evidence, or had insufficient time to obtain

¶20 Several cases that followed *Stroud* have explored the scope of its bright line rule in various contexts. In *Fladebo*, we upheld the search of the defendant's purse found in her car at the scene of an accident, where she was arrested for driving while intoxicated. 113 Wn.2d at 395-97. We rejected the argument that a woman's purse is not subject to search because it is akin to a locked container, *id.* at 395, and further held that the search was "properly timed" insofar as it took place immediately after the defendant was removed from the vehicle and arrested. *Id.* at 397. We distinguished cases invalidating automobile searches where the search was not contemporaneous with the arrest and the area searched was not within the arrestee's immediate control. *Id.* at 396 (distinguishing *United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987) and *State v. Boyce*, 52 Wn. App. 274, 758 P.2d 1017 (1988)). We noted that *Stroud*'s bright line rule grew out of the "grab zone" rule of *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and thus, the exigencies that justify the search incident to arrest exception remain dependent on the closeness in time between the search and the arrestee's immediate control of the area searched. *Fladebo*, 113 Wn.2d at 396.

¶21 Subsequently in *Johnson* and *Vrieling*, we upheld searches of a sleeping compartment of a semitractor-trailer and a motor home, respectively, on the basis that these areas were within the scope of the passenger compartment subject to search under *Stroud*. *Johnson*, 128 Wn.2d at 447-50 (concluding that valid search incident to arrest included sleeping area of vehicle that was readily accessible from passenger compartment); *Vrieling*, 144 Wn.2d at 495-96 (allowing search of motor home incident to arrest of driver). In these cases, we emphasized the very real concern for officer safety during traffic stops when vehicle occupants are arrested, underscoring the need for an easily applied,

a warrant. *Id.* at 699-700. This analysis in *Ringer* focuses on the historical basis for the search incident to arrest exception. At any rate, whether *Ringer* actually stated the rule that *Stroud* is described as having overruled may be academic at this point.

bright line rule as to the scope of the area that may be searched. *See Johnson*, 128 Wn.2d at 448-49; *Vrieling*, 144 Wn.2d at 496. There was no issue in *Johnson* or *Vrieling* as to the necessary nexus between the person arrested and the vehicle searched because the defendants were driving at the time they were stopped and their vehicles were searched immediately after they were removed and arrested. *Johnson*, 128 Wn.2d at 434-36; *Vrieling*, 144 Wn.2d at 490-91.

¶22 In *Parker*, we again addressed the scope of the bright line rule under *Stroud* with four separate opinions discussing the history and justification of the search incident to arrest exception. 139 Wn.2d 486. We held, consistent with article I, section 7's dictate to narrowly construe warrant exceptions, that a valid search incident to arrest does not encompass the search of items belonging to a vehicle's nonarrested passenger absent a showing that the passenger posed a safety risk to officers or had secreted contraband. *Id.* at 505 (lead opinion of Johnson, J.); 516-17 (Talmadge, J., concurring).

¶23 Significantly, each of these cases following *Stroud* focused on the permissible *scope* of a search incident to arrest. None involved directly the question of when the exception applies in the first instance, insofar as when a search is in fact *incident* to an arrest. We addressed part of this question in *State v. O'Neill*, 148 Wn.2d 564, 585-86, 62 P.3d 489 (2003), holding that a valid custodial arrest is a condition precedent to a search incident to arrest, and it is not enough that officers have probable cause to effectuate an arrest. We underscored the importance of not allowing a drift from the threshold requirements given that a search incident to arrest is not merely an exception to the warrant requirement, but allows a suspicionless, warrantless search. *Id.* We held that an actual custodial arrest is necessary to provide " 'authority of law' " under article I, section 7 for such a search. *Id.*

¶24 As in *O'Neill*, we are here concerned with the preconditions to a valid search incident to arrest, rather

than the scope of such a search once allowed. We cannot presume that every time a car is present at the scene of an arrest, a search of the car falls within the scope of *Stroud*'s bright line rule. The question before us, then, is whether it would stretch the search incident to arrest exception beyond its justifications to apply it where the arrestee is not a driver or recent occupant of the vehicle, the basis for arrest is not related to the use of the vehicle, and the arrestee is physically detained and secured away from the vehicle before the search. We believe it would.

¶25 Unfortunately, the scope of the search incident to arrest exception under our article I, section 7 has experienced the same sort of progressive distortion that the United States Supreme Court recently recognized resulted in the unwarranted expansion of the search incident to arrest exception under the Fourth Amendment. *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 1718-19, 173 L. Ed. 2d 485 (2009). In *Gant*, the Court observed that many lower courts have followed the broadest possible reading of the search incident to arrest exception as articulated in *Belton*, with the result that it has come to be regarded as " 'a police entitlement rather than as an exception justified by the twin rationales of *Chimel*.' " *Id.* at 1718 (quoting *Thornton v. United States*, 541 U.S. 615, 624, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (O'Connor, J., concurring in part)). Recognizing that the decision in *Belton* itself purported to follow *Chimel*, the Court in *Gant* issued a necessary course correction to assure that a search incident to the arrest of a recent vehicle occupant under the Fourth Amendment takes place "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719.

¶26 Article I, section 7 requires no less. We have long recognized that our constitution's express regard for an individual's "private affairs" places strict limits on law enforcement activities in the area of search and seizure. *See, e.g.*, *O'Neill*, 148 Wn.2d at 585-86. Today we hold that the search of a vehicle incident to the arrest of a recent

occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search. While we believe this holding is consistent with the core rationale of our cases, we also recognize that we have heretofore upheld searches incident to arrest conducted after the arrestee has been secured and the attendant risk to officers in the field has passed. Today, we expressly disapprove of this expansive application of the narrow search incident to arrest exception.

¶27 Under a proper understanding of the search incident to arrest exception, the circumstances here simply do not involve a search *incident* to arrest. Patton was not a driver or recent occupant of the vehicle searched. There is no indication in the record that Patton even had keys to the vehicle. No connection existed between Patton, the reason for his arrest warrant, and the vehicle. Rather, Patton's warrant was for failure to appear in court for a past offense unrelated to the eventual drug charge that arose from the car search. Thus, there was no basis to believe evidence relating to Patton's arrest would have been found in the car. Nor did Patton's brief proximity to the car give rise to safety concerns upon his arrest. At the time of the search, Patton was secured in the patrol car, some distance from his vehicle. Further, the record does not indicate that prior to the search there was any evidence of the crime of arrest or contraband in the car, as in *Stroud*. In the end, the only evident connection between the car and Patton's arrest was that Deputy Converse chose the moment at which Patton went to his parked car to execute the outstanding arrest warrant. That he may have had good reason to do so is not questioned, but to deem the vehicle search here "incident" to Patton's arrest "stretches [the exception] beyond its

breaking point." *Thornton*, 541 U.S. at 625 (Scalia, J., concurring in judgment).[9]

## CONCLUSION

¶28  Consistent with the article I, section 7 imperative to narrowly confine exceptions to the warrant requirement, we hold that the automobile search incident to arrest exception to the warrant requirement does not extend to the circumstances here. We reverse the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶29  J.M. JOHNSON, J. (concurring) — The United States Supreme Court has decided this case for us, while this court was agonizing for a year over the analysis. That Court issued its opinion in *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) on April 21, 2009, holding under the United States Constitution that a search of a vehicle violates the Fourth Amendment where the defendant is remotely restrained and no longer had access to the vehicle. In this case, the majority agreed on the relevant facts: "[Randall J.] Patton was taken into custody, handcuffed, and placed in the back of Deputy Converse's patrol car. The deputies then searched Patton's vehicle, where they found two baggies of methamphetamine and $122 cash under the driver's seat." Majority at 385.

¶30  Since the relevant facts are identical, the United States Supreme Court holding must be applied, inserting this defendant (Patton) for Gant.

---

[9] Because we resolve this case on independent and adequate state grounds under article I, section 7, it is not necessary to reach Patton's argument under the Fourth Amendment. We are mindful, however, that our decision is consistent with the United States Supreme Court's recent holding in *Gant*, under which the Fourth Amendment also disallows a vehicle search conducted after the arrestee has been secured and is no longer within reaching distance of the passenger compartment of the vehicle. *Gant*, 129 S. Ct. at 1719.

> Because [Patton] could not have accessed his car to retrieve weapons or evidence at the time of the search, . . . the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and applied to vehicle searches in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), did not justify the search in this case.

*Gant*, 129 S. Ct. at 1714. It is beyond argument that the rulings of the United States Supreme Court are binding on this court through the supremacy clause. Thus, there should be nothing to this case save to affirm the trial court order to suppress the evidence. Instead, this court engages in pages of discussion of precedent of this court considering issues of Washington State constitutional law, most of which were not raised by the defendant.

¶31 Separate analysis of our Washington Constitution may sometimes be necessary, but here we are not free to disregard the directly controlling United States Supreme Court decision. Even if we did so, prior rulings of this court do not authorize this search once it was factually established that Patton was remotely restrained. *State v. Johnson*, 128 Wn.2d 431, 909 P.2d 293 (1996), cited by the majority at 385, actually included a specific reference that resolved the Washington Constitutional arguments: "In *Stroud*, we said that a warrantless search of certain areas within a vehicle was not justified where . . . there was little danger that the occupants could grab a weapon or destroy evidence located within the area. *See* [*State v.* ]*Stroud*, 106 Wn.2d [144,] 152[, 720 P.2d 436 (1986)]." *Johnson*, 128 Wn.2d at 459 n.118 (Alexander, J., concurring).

## CONCLUSION

¶32 The United States Supreme Court decided this case in June 2009. The majority engages in extensive dicta unnecessary to the decision to suppress the evidence on that basis. Accordingly, I concur.