239 P.3d 1160 (2010)
STATE of Washington, Respondent,
v.
Joseph James CHESLEY, Appellant.
No. 38876-6-II.
Court of Appeals of Washington, Division 2.
October 5, 2010.
*1162 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Joseph James Chesley appeals his convictions of first degree possession of stolen property and possession of a stolen firearm. His car was searched incident to his arrest for car prowl and his car trunk was searched under a warrant. We hold that his arrest was lawful but that the subsequent search incident to his arrest was not. And we hold that the search of his trunk was unlawful because the probable cause supporting the warrant used to search it relied on tainted evidence. We reverse and remand.

I. Facts
¶2 Officer Roland Sapinoso was on a routine patrol when dispatch notified him that a bait car alarm had been activated.[1] He was approximately a quarter-mile away from it, which was in a nearby parking lot, and he responded to the scene in less than one minute.
¶3 When Officer Sapinoso arrived at the scene, he did not see any cars entering or exiting the lot. A few cars were in the lot, including the bait car and another car parked in an adjacent stall. Officer Sapinoso saw a person, later identified as Chesley, standing between the bait car and the other car. As he drove closer, Chesley quickly jumped into the adjacent car's driver seat.
¶4 When backup arrived, Officer Sapinoso and the other officers ordered Chesley to exit the car and handcuffed him as he complied. The officers also saw two other passengers in the car, ordered them to exit, and took them into custody.
¶5 After the car occupants were in custody, Officer Sapinoso saw that the bait car's passenger door lock had been punched through. Two hours before this incident, Officer Sapinoso had responded to the same bait car, and the lock was intact. He looked through the driver side window of Chesley's car and saw several tools spread throughout the floorboard, including hammers, picks, screwdrivers, and electrical items. At that point, believing the items were burglary tools, Officer Sapinoso formally arrested Chesley.
¶6 Officers then searched Chesley's car. During the search, they found several items that had been reported stolen. Based on the contents found in the car, they obtained a telephonic search warrant to search its trunk. In the trunk, they discovered a stolen gun and some other items.
¶7 The State charged Chesley with first degree possession of stolen property and possession of a stolen firearm. Chesley moved to suppress the evidence officers obtained by searching his car, arguing that they did not have probable cause to arrest *1163 him. The trial court denied his motion and found him guilty in a stipulated facts bench trial.

II. Standard of Review
¶8 We review a trial court's findings of fact in a suppression hearing for substantial evidence. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994); State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001), review denied, 145 Wash.2d 1016, 41 P.3d 483 (2002). Unchallenged findings are verities on appeal. State v. Valdez, 167 Wash.2d 761, 767, 224 P.3d 751 (2009) (citing State v. Gaines, 154 Wash.2d 711, 716, 116 P.3d 993 (2005)). We review questions of law de novo. Valdez, 167 Wash.2d at 767, 224 P.3d 751.

III. Discussion

A. Was there authority to arrest Chesley?
¶ 9 Chesley contends that Officer Sapinoso did not have probable cause to arrest him. He argues that probable cause to arrest him for car prowling required evidence that Chesley had caused the damage to the bait car.
¶ 10 A lawful custodial arrest requires the officer to have probable cause to believe that a person has committed a crime. State v. Gaddy, 152 Wash.2d 64, 70, 93 P.3d 872 (2004); State v. McKenna, 91 Wash.App. 554, 560, 958 P.2d 1017 (1998). "Probable cause `boils down, in criminal situations, to a simple determination of whether the relevant official, police or judicial, could reasonably believe that the person to be arrested has committed the crime.'" State v. Fisher, 145 Wash.2d 209, 220 n. 47, 35 P.3d 366 (2001) (quoting State v. Klinker, 85 Wash.2d 509, 521, 537 P.2d 268 (1975)). Probable cause is not knowledge of evidence sufficient to establish guilt beyond a reasonable doubt but, rather, is "reasonable grounds for suspicion coupled with evidence of circumstances to convince a cautious or disinterested person that the accused is guilty." State v. Bellows, 72 Wash.2d 264, 266, 432 P.2d 654 (1967). We determine whether the officer's belief was reasonable after considering all the facts within the officer's knowledge at the time of arrest as well as the officer's special experience and expertise. State v. Fricks, 91 Wash.2d 391, 398, 588 P.2d 1328 (1979).
¶ 11 But before having probable cause that a person has committed a crime for which an arrest may be made, an officer discharging his routine law enforcement duties "may detain and question that suspect concerning his knowledge of the commission of a crime, including one in process of being committed or about to be committed, without the detention or questioning being considered an arrest and without the necessity of the police officer first giving the person questioned Miranda[2] warnings." State v. Sinclair, 11 Wash.App. 523, 528, 523 P.2d 1209 (1974); see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (an investigatory stop is justified if the officer has reasonable and articulable suspicion that the defendant is involved in criminal activity). As the Walker court explained:
"The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances."
State v. Walker, 24 Wash.App. 823, 828, 604 P.2d 514 (1979), review denied, 93 Wash.2d 1017 (1980) (quoting State v. Watson, 165 Conn. 577, 585, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1977, 40 L.Ed.2d 311 (1974)). Thus, once the facts establish probable cause after reasonable inquiry, the officer may make a lawful custodial arrest. See, e.g., State v. Gluck, 83 Wash.2d 424, 426-27, 518 P.2d 703 (1974); State v. Clark, 13 Wash.App. 21, 23, 533 P.2d 387, review denied, 85 Wash.2d 1018 (1975).
¶ 12 For example, in Clark, officers responded to investigate a home silent alarm that had been triggered. Clark, 13 Wash. App. at 22, 533 P.2d 387. When the officers arrived at the scene, they saw Clark walking *1164 toward the home and noted that a person of his appearance would not ordinarily be seen there. Clark, 13 Wash.App. at 22, 533 P.2d 387. The officers put Clark in the patrol cruiser, inspected the home, found evidence of burglary, and then formally arrested Clark. Clark, 13 Wash.App. at 22, 533 P.2d 387. The court held that Clark's detention was reasonable and that probable cause existed to make the arrest as soon as the officers had evidence of the burglary:
We hold that the officers in this case acted reasonably in detaining Clark while they investigated the source of the alarm. The signal from the silent alarm device was a substantial indication that someone was forcing entry into the house. Clark's appearance, conduct, and presence in the vicinity pointed directly toward his participation in the activation of the alarm. The police, acting for the citizenry, had the duty to investigate. This required Clark's detention and an examination of the house. There was probable cause to arrest Clark as soon as the fact of the burglary had been established.
Clark, 13 Wash.App. at 23-24, 533 P.2d 387.
¶ 13 Here, Officer Sapinoso responded to the bait car's silent alarm and saw Chesley between it and another car parked in an adjacent stall. When he drove closer, Chesley quickly hopped into the adjacent car. Officer Sapinoso had responded in less than one minute and did not see any cars enter or exit the parking lot. Like in Clark, based on Chesley's appearance, conduct, and presence in the vicinity, Officer Sapinoso had a reasonable and articulable suspicion that Chesley had activated the bait car's alarm. Officer Sapinoso properly detained Chesley to investigate what triggered the alarm.
¶ 14 While Chesley was detained, Officer Sapinoso saw that the bait car's passenger door lock had been punched through. Only two hours before, Officer Sapinoso had responded to the same bait car and the lock was intact. He also saw several tools, in open view, spread throughout the floorboard of Chesley's car. Based on his training and experience, he knew these items were burglary tools. Once Officer Sapinoso saw the punched door lock and the burglary tools, he had probable cause to arrest Chesley for a car prowl.
¶ 15 Although car prowling is a gross misdemeanor, which usually requires an officer to witness the crime, an officer may arrest a person for a gross misdemeanor not committed in the officer's presence if the officer has probable cause to believe that the person "has committed or is committing a. . . gross misdemeanor . . . involving physical harm or threats of harm to . . . property or the unlawful taking of property." RCW 10.31.100(1). Car prowling involves a crime against property in a car. RCW 9A.52.100. Officer Sapinoso could therefore arrest Chesley for a car prowl without witnessing the crime because he had probable cause to believe that Chesley has committed or was committing a crime against property.

B. Was there authority of law to search Chesley's car?
¶ 16 Chesley next argues that the search incident to his arrest was unlawful under both the Fourth Amendment to the United States Constitution and article I, section 7 of our state constitution. "When a party claims both state and federal constitutional violations, we turn first to our state constitution." State v. Patton, 167 Wash.2d 379, 385, 219 P.3d 651 (2009) (citing State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996)).
¶ 17 Article I, section 7 of our state constitution states: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Washington courts have long recognized a privacy interest in automobiles and their contents. Patton, 167 Wash.2d at 385, 219 P.3d 651 (citing State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999); State v. Gibbons, 118 Wash. 171, 187-88, 203 P. 390 (1922)). The search of Chesley's car disturbed his private affairs, so the question is whether the searching officers had authority of law.
¶ 18 A valid warrant, subject to a few jealously guarded exceptions, establishes the requisite "authority of law." State v. Afana, 169 Wash.2d 169, 176-77, 233 P.3d 879 (2010) (quoting Wash. Const. art. I, § 7). *1165 The State has the burden to establish a valid exception applies. Afana, 169 Wash.2d at 177, 233 P.3d 879. Unless the State carries its burden, we must conclude that the search was made without authority of law. Afana, 169 Wash.2d at 177, 233 P.3d 879.
¶ 19 Article I, section 7 requires "no less" than the Fourth Amendment. Patton, 167 Wash.2d at 394, 219 P.3d 651. Accordingly, Patton articulated the rule that
the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search.
Patton, 167 Wash.2d at 394-95, 219 P.3d 651. Our Supreme Court reiterated Patton in Valdez. In Valdez, the court held that a warrantless search of an automobile is permissible under the search incident to arrest exception only "when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest." Valdez, 167 Wash.2d at 777, 224 P.3d 751.
¶ 20 Most recently, our Supreme Court decided Afana, where the issue was whether the search was "justified by a concern for the safety of the arresting officer or the concealment or destruction of evidence of the crime of arrest." Afana, 169 Wash.2d at 178, 233 P.3d 879. In Afana, an officer arrested a passenger of a car on an outstanding trespass warrant and then searched the car incident to her arrest. Afana, 169 Wash.2d at 174, 233 P.3d 879. The court held that the search was not incident to arrest because, although the warrant for a driver's arrest gave the officer a valid basis for arrest, the officer had no reason to believe that the car in which the defendant was a passenger contained evidence of trespass, the crime for which she was being arrested. Afana, 169 Wash.2d at 178, 233 P.3d 879. The court also noted that the arrestee was in custody at the time of the search and posed no safety risk. Afana, 169 Wash.2d at 178, 233 P.3d 879.
¶ 21 Here, Officer Sapinoso had reason to believe that Chesley's car contained evidence of a car prowl. He responded to a bait car alarm and arrived to its location quickly. He saw Chesley standing next to the bait car, saw him suspiciously hop into the adjacent car, saw that the bait car door lock had been punched out, and saw burglary tools in Chesley's car.[3] Unlike Afana, the search of Chesley's car was incident to his arrest for car prowl. But the inquiry does not end there because we must next determine whether the search was permissible under the search incident to arrest exception.
¶ 22 We examine the search incident to Chesley's arrest under the rule recently articulated in Patton and Valdez. Applying that rule here, nothing in the record indicates that Officer Sapinoso searched Chesley's car to prevent destruction or concealment of evidence. He immediately ordered Chesley and the other occupants out of the car and detained them. At the time of the search, Chesley and the other occupants were in custody. Nor did the officers have reason to believe that the arrestee, Chesley, posed a safety risk because, again, he was in custody at the time of the search.[4] We hold *1166 the search incident to Chesley's arrest was unlawful because it was not necessary at the time of the search to preserve officer safety or prevent concealment or destruction of evidence of the crime of the arrest. Valdez, 167 Wash.2d at 777, 224 P.3d 751; Patton, 167 Wash.2d at 394-95, 219 P.3d 651; Afana, 169 Wash.2d at 177-78, 233 P.3d 879.
¶ 23 We further hold that the search of his trunk was unlawful because the probable cause supporting the warrant used to search it relied on tainted evidence. State v. Schlieker, 115 Wash.App. 264, 266-67, 62 P.3d 520 (2003) (suppression is required as fruit of poisonous tree when police search was unlawful). We reverse with instructions to the trial court to enter an order of dismissal. Given our disposition, we decline to address the other issues that Chesley raises on this appeal.
I concur: ARMSTRONG, J.
QUINN-BRINTNALL, J. (dissenting).
¶ 24 Because Joseph J. Chesley challenged only the sufficiency of probable cause for his arrest, he has failed to preserve his challenge to the scope of the vehicle search incident to his lawful arrest. State v. Millan, 151 Wash. App. 492, 212 P.3d 603 (2009), review granted, 168 Wash.2d 1005, 226 P.3d 781 (2010); State v. Donohoe, 39 Wash.App. 778, 782 n. 5, 695 P.2d 150 ("Because a defendant can receive complete constitutional protection against the use of illegally obtained evidence through superior court suppression hearing procedures, and because the rights afforded by these constitutional provisions are not `trial rights' or part of the `truth-finding function' they can be waived"), review denied, 103 Wash.2d 1032 (1985). To the extent that the majority reviews the record and determines facts necessary to resolve issues never presented to the court whose decision is being reviewed, it exceeds the scope of its appellate review authority. See Millan, 151 Wash. App. at 502, 212 P.3d 603. Accordingly, I respectfully dissent.
¶ 25 In this case, the law enforcement officers clearly acted in accord with state and federal law when they arrested Chesley after he had committed a crime in their presence and when they secured evidence lying in open view at the crime scene. In particular, the officers' actions fall squarely within the established exception to the warrant requirement permitting an officer to conduct a vehicle search incident to a lawful arrest when it is "`reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (quoting Thornton v. United States, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment)).
¶ 26 Thurston County law enforcement officers set out "bait cars" that would send a silent alarm when someone tried to steal the car or its contents. When Chesley punched through the bait car's door lock, he triggered the bait car's silent alarm. Police responded and saw Chesley standing next to the damaged vehicle. Chesley tried to escape by jumping into his car, which was parked next to the bait car. Police arrested Chesley and his companions and seized the burglary tools they saw through the windows of Chesley's car. Simply stated, the police did not violate either the Fourth Amendment of the federal constitution nor article 1, section 7 of the Washington State constitution when they caught Chesley and his friends in the act of attempting to steal the bait car or its contents.
¶ 27 Recent federal and state Supreme Court opinions limiting the scope of the vehicle search incident to arrest warrant exception do not prohibit police from arresting persons caught in the act of committing a crime nor do they relieve police of the responsibility to secure evidence of that crime[5] lying in open view on the floor of the criminal's *1167 car at the time of the arrest. Because the Thurston County law enforcement officers properly searched Chesley's vehicle incident to his lawful arrest, I would affirm. Alternatively, because as an appellate court we lack authority to hold a suppression hearing on a record of a proceeding during which the issue of unlawful search and seizure was not presented for review, I would remand.
NOTES
[1] Bait cars are used to stop car prowls and thefts. Each bait car contains a silent alarm that is activated when someone uses any kind of force or manipulation to gain entry.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The dissent emphasizes that the tools were in open view, but neither party argued that the open view doctrine applied under our state law. Nor did they argue its relationship to Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009).
[4] Afana noted that in Gant, Patton, and Valdez, the arrestee was handcuffed and placed in a patrol car before the challenged search. Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879. The record in Afana did not indicate the arrestee's precise situation at the time of the search; it indicated only that she was "under arrest." Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879. The Afana court held that the searching deputy did not have reason to believe the arrestee posed a safety risk, noting that the State did not argue that the arrestee was unsecured at the time of the search or that she posed a safety risk. Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879.

Similar to Afana, the record does not indicate Chesley or the other occupant's exact location at the time of search; it indicates only that they were taken into custody. Also like Afana, the State does not argue that Chesley or the other occupants posed a safety risk. Still, nothing in the record indicates that Officer Sapinoso feared for his safety at the time of search.
[5] See Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (law enforcement officers may offend due process by failing to collect and preserve potentially useful evidence in bad faith); see also State v. Wittenbarger, 124 Wash.2d 467, 477, 880 P.2d 517 (1994) (State violates a defendant's due process rights by failing to preserve "potentially useful" evidence while acting in bad faith or by failing to preserve "materially exculpatory evidence" regardless of whether acting in bad faith (citing Youngblood, 488 U.S. at 58, 109 S.Ct. 333)).