# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION III

| | |
|---|---|
| STATE OF WASHINGTON, | No. 36068-7-III |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ADRIAN ALLEN COLEMAN, | |
| Appellant. | |

MAXA, C.J. – Adrian Coleman appeals his conviction of possession of a controlled substance, methamphetamine, arising from a traffic stop on a warrant for Coleman's arrest and the subsequent impounding of his vehicle. After a controlled substance detection dog detected the odor of controlled substances in Coleman's impounded vehicle, an officer obtained a search warrant. During the search, officers discovered a glass pipe with methamphetamine residue. The trial court denied Coleman's motion to suppress the evidence found in his vehicle.

We hold that (1) the trial court did not err in denying Coleman's motion to suppress because the controlled substance detection dog's sniff around the exterior of his vehicle was not a search in that Coleman did not have a reasonable expectation of privacy in the air outside his impounded vehicle; (2) as the State concedes, the criminal filing fee and the provision imposing interest on legal financial obligations (LFOs) must be stricken from the judgment and sentence;

and (3) the trial court properly imposed the DNA collection fee because Coleman's DNA had not previously been collected in Washington.

Accordingly, we affirm Coleman's conviction, but we remand for the trial court to strike the criminal filing fee and to amend the judgment and sentence to provide that no interest will accrue on the LFOs imposed.

FACTS

On May 13, 2016, Prosser police officers stopped Coleman's vehicle and arrested him based on an outstanding Oregon felony warrant and the fact that his driver's license was suspended. They also impounded Coleman's vehicle.

The officers believed that Coleman may have been transporting narcotics. A controlled substance detection dog conducted an exterior vehicle sniff on Coleman's impounded vehicle. The dog gave a positive alert on the vehicle's trunk seam.

One of the officers prepared an affidavit for a search warrant of Coleman's vehicle based on the dog's alert, Coleman's narcotics history, his attempt to flee prior to arrest, and indications that a woman at the scene of Coleman's arrest may have been assisting him to sell narcotics. The search warrant was issued based on the affidavit. Officers found a glass pipe with methamphetamine residue in the glove compartment of the vehicle. The State charged Coleman with possession of a controlled substance, methamphetamine.

Coleman moved to suppress the evidence discovered in his vehicle on the basis that the dog sniff constituted an illegal warrantless search. After a hearing, the court denied the motion to suppress. The trial court then conducted a stipulated facts trial, and the court found Coleman guilty of possession of a controlled substance, methamphetamine.

At sentencing, the trial court found Coleman indigent for purposes of paying discretionary LFOs. But the court imposed a $200 criminal filing fee, a $100 DNA collection fee, and a $500 crime victim penalty assessment as mandatory LFOs. The judgment and sentence stated that the LFOs would bear interest from the date of the judgment until payment in full. The court did not check a box that would have required payment of LFOs to commence immediately. The court entered an order of indigency for purposes of Coleman's appeal.

Coleman appeals his conviction and certain LFO provisions in the judgment and sentence.

ANALYSIS

A.  CONTROLLED SUBSTANCE DETECTION DOG SNIFF AS A SEARCH

Coleman argues that the use of a controlled substance detection dog to sniff around his impounded vehicle without a search warrant constituted an unlawful warrantless search. And he claims that without the dog's alert to the presence of controlled substance odors, the State did not have probable cause to obtain a search warrant for the vehicle.[1] We disagree.

1.  Legal Principles

Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The protected privacy interest extends to vehicles and their contents. *State v. Patton*, 167 Wn.2d 379, 385, 219 P.3d 651 (2009). Article I, section 7 prohibits warrantless searches of vehicles unless an exception to the warrant requirement applies. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). However, conduct that does not rise to the level of a "search" does not

---

[1] Coleman does not argue that there was no probable cause for the search warrant if the controlled substance detection dog's alert could be considered.

implicate article I, section 7. *See State v. Jones*, 163 Wn. App. 354, 361, 266 P.3d 886 (2011) (addressing open view doctrine).

In general, "a search does not occur if a law enforcement officer is able to detect something using one or more of his senses from a nonintrusive vantage point." *State v. Hartzell*, 156 Wn. App. 918, 929, 237 P.3d 928 (2010). This type of observation does not violate article I, section 7 because "something voluntarily exposed to the general public and observable without an enhancement device from a lawful vantage point is not considered part of a person's private affairs." *Id.*

A dog sniff technically is a type of investigative device. *See State v. Mecham*, 186 Wn.2d 128, 147, 380 P.3d 414 (2016). Therefore, whether using a controlled substance detection dog sniff to detect the odor of controlled substances constitutes a search depends on the specific circumstances of the case. *Hartzell*, 156 Wn. App. at 929. The United States Supreme Court has held that a dog sniff is not a search under the Fourth Amendment to the United States Constitution. *E.g., Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). But article I, section 7 provides broader protection in this context. *State v. Boyce*, 44 Wn. App. 724, 728-30, 723 P.2d 28 (1986).

The court in *Hartzell* stated the general rule: "[A]s long as the canine 'sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.' " 156 Wn. App. at 929 (quoting *Boyce*, 44 Wn. App. at 730).

2. Search Analysis

Here, Coleman's car was impounded in a police impound lot when the controlled substance detection dog conducted a sniff around the car. Coleman was no longer in the car but

4

instead was in jail. Both the dog and the handler stayed outside the vehicle throughout the entire sniff procedure.

In *Hartzell*, the court addressed whether a dog sniff of the air by an open car window was a search. 156 Wn. App. at 928-30. In that case, a dog sniffed a bullet hole in a car parked in a driveway and then located the gun that had caused that bullet hole. *Id.* at 927-28. The court held that the dog sniff was not a search because the defendant "did not have a reasonable expectation of privacy in the air coming from the open window of the vehicle." *Id.* at 929-30. In addition, the defendant no longer was in the car, the dog was sniffing from a lawful vantage point outside the car, and "[t]he sniff was only minimally intrusive." *Id.* at 930.

The Supreme Court in *Mecham* cited *Hartzell* with approval, in a parenthetical characterizing *Hartzell's* holding as "canine sniff outside of car window is not a search because suspects have no reasonable expectation of privacy in air outside a car window." 186 Wn.2d at 147.

The analysis in *Hartzell*, confirmed in *Mecham*, compels the conclusion here that the dog sniff of the air around Coleman's impounded vehicle was not a search. If anything, the dog sniff in this case was less intrusive than the dog sniff in *Hartzell*. There, the dog jumped up on the door of the defendant's car and sniffed its exterior while the car was parked in a private driveway. *Hartzell*, 156 Wn. App. at 927. Here, the dog sniffed Coleman's vehicle when it was impounded in a police impound lot, walking around the vehicle or crouching under the trunk, but never jumping on the vehicle itself.

Coleman argues that we should follow *State v. Dearman*, 92 Wn. App. 630, 962 P.2d 850 (1998). In *Dearman*, the court considered whether a dog sniff of the seams along a garage door to detect the odor of marijuana was a warrantless search under article I, section 7. *Id.* at 632-35.

The court stated that the use of a trained controlled substance detection dog is an intrusive means of observation because it exposes private information that the police could not have obtained using only one or more of their senses from a lawful vantage point. *Id.* at 635. The court also stated that using a significantly enhanced sensory instrument, such as a dog sniff, constituted a search because the defendant had a heightened expectation of privacy inside his private dwelling. *Id.* at 636-37.

However, *Dearman* involved a dog sniff of a garage and implicated the privacy interests associated with private dwellings. *Id.* at 632, 636. Dwellings receive more protection under article I, section 7 than vehicles. *See State v. Vrieling*, 144 Wn.2d 489, 494-95, 28 P.3d 762 (2001) (noting that motor vehicles do not receive the same heightened privacy protection as private homes). This case, like *Hartzell*, involves a dog sniff around a vehicle and the privacy interests are distinguishable. In fact, the court in *Hartzell* did not even mention *Dearman* in its analysis.

Coleman also claims that *Hartzell* is distinguishable because the dog sniff here occurred after his car had been impounded, and police were investigating a possible crime other than the crime for which Coleman was arrested. He cites *State v. Hendrickson*, 129 Wn.2d 61, 76-77, 917 P.2d 563 (1996), for the proposition that a warrant or an exception to the warrant requirement is necessary for the search of an impounded vehicle. However, as discussed above, the dog sniff here did not constitute a search, and conduct that does not rise to the level of a search does not implicate article I, section 7. *See Jones*, 163 Wn. App. at 361. Coleman fails to articulate how the fact that his car was impounded or that his original arrest had been for a crime other than possession of the controlled substance ultimately found in his glove compartment

6

creates a heightened privacy interest in his vehicle or makes the canine sniff itself particularly intrusive.

Coleman also argues that the dog sniff in *Hartzell* did not compromise a protected area because the officer in that case could already see a bullet hole in the passenger door of the defendant's truck and a spent cartridge on the floor inside the truck. Coleman contrasts his own case, where the glass pipe with methamphetamine residue was eventually found in the glove compartment, out of sight from law enforcement when the dog sniff took place. Coleman argues that the canine sniff was particularly intrusive because it allowed officers to see or smell what they could not otherwise do with their own senses.

A search does not generally occur if a law enforcement officer is able to detect something using one or more of his senses from a nonintrusive vantage point. *Hartzell*, 156 Wn. at 929. However, the question here is more specific – whether the dog sniffed the object from an area where the defendant did not have a reasonable expectation of privacy, and whether the canine sniff itself was minimally intrusive. *Id.* As discussed above, the dog sniff here satisfies both parts of this test and did not constitute a search.

We hold that the dog sniff of the air around Coleman's vehicle was not a search and therefore was not unlawful under article I, section 7. Therefore, the dog's alert could be used to establish probable cause to obtain the search warrant for Coleman's vehicle.[2]

B.  LFO PROVISIONS

Coleman argues that under the 2018 amendments to the LFO statutes, the criminal filing fee, the DNA collection fee, and the requirement that nonrestitution LFOs bear interest should be

---

[2] Coleman also argues that defense counsel provided ineffective assistance by not challenging the legality of the dog sniff. But defense counsel did file a motion to suppress on that basis. Therefore, his argument has no merit.

stricken from his judgment and sentence.[3] We hold that the criminal filing fee and interest provision must be stricken, but not the DNA collection fee.

In 2018, the legislature amended (1) RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on a defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c); (2) RCW 43.43.7541, which establishes that the DNA collection fee no longer is mandatory if the offender's DNA previously had been collected because of a prior conviction; and (3) RCW 10.82.090(1) and (2)(a), which now provide that no interest shall accrue on nonrestitution LFOs after June 7, 2018 and that all accrued interest on nonrestitution LFOs before that date shall be waived. These amendments apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

Coleman argues, and the State concedes, that the criminal filing fee and interest provision must be stricken. Regarding the criminal filing fee, under RCW 10.101.010(3)(a)-(c), a person is "indigent" if he or she receives certain types of public assistance, is involuntarily committed to a public mental health facility, or receives an annual after tax income of 125 percent or less of the current federally established poverty level. At Coleman's sentencing, the trial court found Coleman indigent for purposes of paying LFOs. The record is unclear if the trial court found Coleman indigent based on the definitions in RCW 10.101.010(3)(a)-(c), but the State does not oppose striking the criminal filing fee. Therefore, we order the trial court to strike the criminal filing fee.

---

[3] Coleman also argues that the trial court erred in requiring LFO payments to commence immediately. But the judgment and sentence does not require Coleman's payments on his LFOs to commence immediately. Although the form judgment and sentence contains language stating that "[a]ll payments shall be made in accordance with the policies of the clerk and on a schedule established by the DOC or the clerk of the court, commencing immediately," the box next to this language on Coleman's judgment and sentence was not checked. Clerk's Papers at 123.

Regarding the interest provision, RCW 10.82.090(1) and (2)(a) expressly provide that all accrued interest on nonrestitution LFOs must be waived and that interest no longer shall accrue on those LFOs. Here, the court did not order restitution and imposed only nonrestitution LFOs. The State does not oppose vacation of the accrual of interest on Coleman's nonrestitution LFOs. Therefore, we order the trial court to amend the judgment and sentence to provide that no interest will accrue on the LFOs imposed.

Finally, Coleman argues that the DNA collection fee must be stricken because his DNA was collected before trial in this case as the result of a previous conviction. But although Coleman's criminal history shows that he had several prior convictions, all these convictions occurred in Oregon. RCW 43.43.7541 provides that the DNA collection fee must be imposed "unless *the state* has previously collected the offender's DNA as a result of a prior conviction." (Emphasis added.) Because Coleman had no previous felony convictions in Washington, the State had not yet collected his DNA. Therefore, we affirm the imposition of the DNA collection fee.

C.      APPELLATE COSTS

Coleman argues that appellate costs should not be imposed because he continues to be indigent. The State does not address this argument. A commissioner of this court will consider any request for costs under RAP 14.2 if the State submits a cost bill.

CONCLUSION

We affirm Coleman's conviction, but we remand for the trial court to strike the criminal filing fee and to amend the judgment and sentence to provide that no interest will accrue on the LFOs imposed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.[4]

We concur:

_____
KORSMO, J.

_____
PENNELL, J.

---

[4] The Honorable Bradley Maxa is a judge on the Court of Appeals, Division Two, sitting in Division Three under CAR 21(a).