FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR 29 AM 10: 16

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | |
| | ) | No. 69891-5-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| J.J.I., | ) | |
| DOB: 7/11/1995, | ) | |
| | ) | |
| D.M.P., | ) | |
| DOB: 4/10/1995, | ) | |
| | ) | |
| Appellants. | ) | FILED: April 29, 2013 |
| | ) | |

DWYER, J. — Based upon an incident in which J.J.I. and D.M.P., along with other juveniles, were handling various firearms in a Tacoma alleyway, the trial court found J.J.I. guilty of unlawful possession of a firearm in the first degree and found D.M.P. guilty of unlawful possession of a firearm in the second degree. On appeal, J.J.I. contends that the evidence of the firearm that he possessed should have been excluded because his arrest was unlawful. However, because J.J.I. did not move to suppress the evidence before trial—and, thus, no record was developed from which to determine the lawfulness of his arrest—J.J.I. cannot

demonstrate a manifest error reviewable on appeal. Similarly, because J.J.I. cannot show that he was prejudiced because his trial counsel did not move to suppress the evidence, J.J.I.'s ineffective assistance of counsel claim fails. D.M.P. asserts on appeal that a condition of community custody imposed by the trial court has no rational basis in the record and is unconstitutionally vague. However, because D.M.P.'s term of community custody has been completed, this issue is moot. Accordingly, we affirm both J.J.I.'s and D.M.P.'s adjudications of guilt.

I

On June 25, 2011, T.C. picked up his cousin, D.M.P., from D.M.P.'s home. T.C. was in possession of a Glock 9 mm handgun, which he kept in the trunk of the vehicle that he was driving. D.M.P. was carrying his .357 caliber Ruger revolver. T.C. and D.M.P. put both guns in the trunk of T.C.'s vehicle and "drove around town." They went to the home of J.J.I., who retrieved his .22 caliber Ruger revolver, and put the three firearms in the trunk of T.C.'s vehicle. T.C., D.M.P., and J.J.I. then picked up another juvenile from his home, and the four continued to drive around Tacoma "to waste time."

T.C. drove to the area of the Tacoma Mall, where the group saw some other friends, K.L. and Tyreese Woods.[1] K.L. and Woods informed the others that they also had firearms in their possession. The group then decided to drive to a nearby alleyway "in order to show one another their respective firearms."

_____

[1] Because Woods was not a juvenile when these events occurred, he is identified by his full name herein.

K.L. and Woods drove a separate vehicle. Upon their arrival, each member of the group removed his respective firearm from the trunk of the vehicle and "engaged in a 'show-and-tell.'" Following the "show-and-tell," T.C., D.M.P., and J.J.I. again placed their respective firearms in the trunk of T.C.'s vehicle. T.C., who later accepted a plea agreement and testified against D.M.P. and J.J.I. at trial, testified that he was certain that D.M.P. and J.J.I. "each handled and had in [his] possession a firearm."

A few minutes later, Pierce County Deputy Sheriff Jason Mills arrived at the scene. Deputy Mills was dispatched to the scene following a 911 call "reporting that several juvenile males were in the alley moving firearms from the trunk of one vehicle to the trunk of another vehicle." Deputy Mills observed the six young men in and around the vehicles at the listed location. He held the group at gunpoint while waiting for other officers to arrive. Woods then fled the scene, though he was later apprehended.[2] Deputy Mills identified and determined the birthdates of each of the five juveniles.

Additional officers arrived at the scene, and T.C. consented to a search of his vehicle. The officers recovered the three firearms from the trunk of the vehicle. Following his arrest, T.C. informed the officers that the Glock 9 mm handgun belonged to him, that the .357 caliber Ruger revolver belonged to D.M.P., and that the .22 caliber Ruger revolver belonged to J.J.I. J.J.I. and D.M.P. were also arrested.

---

[2] After Woods was apprehended by police, he informed the officers that "he 'rolls' with the Knoccout Crips." T.C. testified at trial that he had told police that K.L. and Woods were members of a gang called the "Knockouts."

- 3 -

On June 27, 2011, D.M.P. was charged by information with unlawful possession of a firearm in the second degree in violation RCW 9.41.040(2)(a)(iii). The next day, J.J.I. was charged by amended information with unlawful possession of a firearm in the first degree in violation of RCW 9.41.040(1)(a).[3] Following an August 10 trial, the trial court adjudicated both D.M.P. and J.J.I. guilty as charged. The court sentenced D.M.P. to 16 days detention and 7 months of community custody, imposing various conditions on the term of community custody. One such condition required that D.M.P. have "[n]o contact with known gang members" during the period of community custody, which terminated on March 31, 2012. J.J.I. was sentenced to 30 days of detention and 12 months of community custody.

D.M.P. and J.J.I. filed timely appeals from their adjudications of guilt. Their cases were thereafter consolidated.

II

J.J.I. contends that the State presented insufficient admissible evidence demonstrating that he committed the offense of unlawful possession of a firearm in the first degree. He asserts that his arrest was unlawful because the arresting officer lacked knowledge of sufficient facts to support a reasonable belief that J.J.I. was engaged in criminal activity and, thus, that the evidence of the firearm obtained pursuant to the arrest was not properly admissible. J.J.I. raises this claim of error for the first time on appeal. Because he did not move to suppress

---

[3] J.J.I. had previously been adjudicated guilty of burglary in the second degree. See RCW 9.41.010(16), .040(1)(a).

the evidence of the firearm in the trial court, no record was developed from which to determine the lawfulness of J.J.I.'s arrest or to raise a question as to the admissibility of evidence. Accordingly, J.J.I. cannot show a manifest error reviewable for the first time on appeal.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, the court may review a claim of error raised for the first time on appeal where it constitutes a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The error must be both of constitutional magnitude and "manifest." State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). "'Manifest in RAP 2.5(a)(3) requires a showing of actual prejudice.'" O'Hara, 167 Wn.2d at 99 (internal quotation marks omitted) (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)); see also McFarland, 127 Wn.2d at 333 ("The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review."). "'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'" State v. Fenwick, 164 Wn. App. 392, 400, 264 P.3d 284 (2011) (internal quotation marks omitted) (quoting O'Hara, 167 Wn.2d at 99), review denied, 173 Wn.2d 1021 (2012).

Here, J.J.I. contends that his arrest was unlawful, and, thus, that the evidence of his firearm was improperly admitted at trial. Specifically, J.J.I.

asserts that Deputy Mills lacked knowledge of sufficient facts to support a reasonable belief that J.J.I. was engaged in criminal activity based upon the information provided to police by the "anonymous" 911 caller.[4] In support of this assertion, J.J.I. relies upon our Supreme Court's decision in State v. Lesnick, 84 Wn.2d 940, 530 P.2d 243 (1975), which provides:

> "It is difficult to conceive of a tip more 'completely lacking in indicia of reliability' than one provided by a completely anonymous and unidentifiable informer, containing no more than a conclusory assertion that a certain individual is engaged in criminal activity. While the police may have a duty to investigate tips which sound reasonable, absent circumstances suggesting the informant's reliability, or some collaborative observation which suggests either the presence of criminal activity or that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible."

Lesnick, 84 Wn.2d at 944 (quoting State v. Lesnick, 10 Wn. App. 281, 285, 518 P.2d 199 (1973)).

Because he did not move to suppress the evidence before trial, J.J.I. has the burden to show manifest error on appeal. Fenwick, 164 Wn. App. at 405. The record indicates that Deputy Mills was dispatched to the scene following a 911 call reporting that there were "several individuals near two cars with weapons."[5] However, because J.J.I. did not request a suppression hearing before trial, the record does not contain sufficient information regarding the

---

[4] We note that the only reference to the anonymity of the 911 caller in the report of proceedings is within defense counsel's argument. No witness testified that the 911 caller was "anonymous." Moreover, defense counsel referenced the "anonymous" 911 caller only to argue that the content of the call constituted "hearsay within hearsay" and was "entirely prejudicial."

[5] Deputy Mills began to testify further regarding the report, providing information about the vehicles reported to be at the scene, when defense counsel lodged a hearsay objection to the testimony. The objection was sustained, and, as a result, no further information regarding the 911 call was entered into the record.

content of the 911 call from which to determine whether, based upon the report, Deputy Mills had a reasonable belief that the juveniles were engaged in criminal activity. To show actual prejudice, J.J.I. must show that the trial court would likely have granted the motion to suppress had such a motion been made. McFarland, 127 Wn.2d at 333-34. Because no motion to suppress was made, the State had no opportunity to fully develop the record in order to demonstrate the lawfulness of J.J.I.'s arrest. Fenwick, 164 Wn. App. at 405. Accordingly, "the record does not indicate whether the trial court would have granted the motion." McFarland, 127 Wn.2d at 334.

"'Where, as here, the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record.'"[6] Fenwick, 164 Wn. App. at 406 (quoting McFarland, 127 Wn.2d at 335). Because, on this record, J.J.I. cannot demonstrate actual prejudice, his claim of error regarding the admissibility of the firearm evidence does not constitute a manifest error. Thus, J.J.I. cannot raise the suppression issue for the first time on appeal pursuant to RAP 2.5(a)(3).

Accordingly, we evaluate J.J.I.'s contention that insufficient evidence supports his adjudication of guilt for unlawful possession of a firearm in the first degree in light of the actual record before us. When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

_____

[6] "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal." McFarland, 127 Wn.2d at 335.

doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A person "is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in [chapter 9.41 RCW]." RCW 9.41.040(1)(a). The State presented evidence that J.J.I. had in his possession a .22 caliber Ruger revolver. Certified copies of J.J.I.'s prior adjudication of guilt for burglary in the second degree were admitted into evidence without objection.[7] Based upon the record before us, we do not conclude that the evidence of the firearm was improperly admitted. Accordingly, we hold that a rational trier of fact could determine that J.J.I. committed the offense of unlawful possession of a firearm in the first degree and, thus, that sufficient evidence supports his adjudication of guilt.

### III

J.J.I. additionally asserts that he received ineffective assistance of counsel because his trial counsel did not move to suppress the firearm evidence obtained pursuant to J.J.I.'s arrest. However, the burden is on J.J.I. to demonstrate deficient representation based upon the record established in the trial court. McFarland, 127 Wn.2d at 335. J.J.I. must show "that the result of the proceeding would have been different but for counsel's deficient representation." McFarland, 127 Wn.2d at 337. As explained above, J.J.I. has not made a showing of

---

[7] A "serious offense" includes "[a]ny crime of violence." RCW 9.41.010(16)(a). Thus, burglary in the second degree constitutes a "serious offense" for purposes of unlawful possession of a firearm. RCW 9.41.010(16)(a), .040(1)(a); see also State v. Releford, 148 Wn. App. 478, 489, 200 P.3d 729 (2009).

- 8 -

prejudice, as the record does not demonstrate that the outcome of the proceeding would have differed had defense counsel moved to suppress the firearm evidence. Accordingly, because J.J.I. has not shown prejudice, his ineffective assistance of counsel claim fails. See Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (holding that an ineffective assistance of counsel claim may be disposed of based solely upon a lack of sufficient prejudice).

IV

D.M.P. challenges the trial court's imposition of the community custody condition requiring that D.M.P. have "[n]o contact with known gang members." He asserts that the trial court abused its discretion by imposing this condition without any rational basis in the record for such imposition and that the condition is impermissibly vague in violation of due process. However, because D.M.P. is no longer subject to the community custody condition imposed by the trial court, this issue is moot.

"As a general rule, we do not consider questions that are moot." State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). "A case is moot if a court can no longer provide effective relief." In re Cross, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983) (concluding that, because the detention that was the subject of the appeal had already ended, the court could not provide the relief sought). However, even where an issue is technically moot, we may nevertheless decide it if it presents a matter of "continuing and substantial public interest." Hunley, 175 Wn.2d at 907. In determining whether a sufficient public interest is involved,

we consider "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur." Cross, 99 Wn.2d at 377 (citing Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)).

Here, D.M.P. first contends that the trial court erred by imposing the condition of community custody requiring that he have "[n]o contact with known gang members" because, he asserts, the condition is not related to the offense for which he was adjudicated guilty and is unsupported by any rational basis in the record. "As part of any term of community custody, the court may order an offender to . . . [c]omply with any crime-related prohibition." RCW 9.94A.703(3)(f). A "crime-related prohibition" is an order of the court "prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). D.M.P. asserts that having contact with "known gang members" is not related to the circumstances surrounding his adjudication of guilt for unlawful possession of a firearm.

However, D.M.P.'s term of community custody expired on March 31, 2012. Because the term of community custody imposed by the trial court has ended, D.M.P. is no longer subject to the condition from which he seeks relief. Moreover, RCW 9.94A.703, which provides authority for the trial court to impose community custody conditions, does not direct the trial court to impose community custody conditions based upon whether such conditions have previously been imposed for prior offenses. Thus, the community custody

- 10 -

condition challenged by D.M.P. would not bind a future sentencing court were D.M.P. convicted of another offense. Cf. State v. Vike, 125 Wn.2d 407, 409 n.2, 885 P.2d 824 (1994) (determining that sentencing issue was not moot because, were defendant sentenced for a future crime, the issue of how convictions would be scored would arise). Accordingly, we determine that this question is moot. Moreover, D.M.P.'s assertion that the condition lacks a rational basis in the record is particular to the facts of this case. Thus, because there is little "likelihood that the question will recur," this question does not present an issue of continuing and substantial public interest. Cross, 99 Wn.2d at 377.

D.M.P. additionally contends that the community custody condition is impermissibly vague in violation of due process. "The due process vagueness doctrine 'serves two important purposes: first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement.'" State v. Sansone, 127 Wn. App. 630, 638, 111 P.3d 1251 (2005) (quoting State v. Halstien, 122 Wn.2d 109, 116-17, 857 P.2d 270 (1993)). A prohibition is unconstitutionally vague if it "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed" or it "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). However, "when a challenged prohibition does not involve First Amendment rights, it is not properly evaluated for facial vagueness; instead, it must be evaluated as applied." Sansone, 127 Wn. App. at 638. Because D.M.P. does not challenge

the community custody condition on First Amendment grounds, D.M.P. can challenge the condition only as applied to his conduct. See Sansone, 127 Wn. App. at 638.

Because D.M.P.'s vagueness challenge is necessarily an as-applied challenge, the fact that D.M.P.'s term of community custody has ended renders this issue moot. An as-applied challenge is characterized by an allegation that application of the prohibition "in the specific context of the party's actions or intended actions is unconstitutional." City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004) (reviewing an as-applied challenge to the constitutionality of a statute). D.M.P. is no longer subject to the condition of community custody challenged herein. Accordingly, there is no possibility that a set of facts will arise to which the community custody condition could be applied. Absent such a possibility, this question is moot. In such a context, we determine that D.M.P.'s vagueness challenge is not of sufficient public interest to necessitate appellate review notwithstanding the fact that the issue is moot. Cf. Sansone, 127 Wn. App. at 637-38 (determining that appellant's vagueness challenge to a community custody condition should be addressed where sanctions had been imposed for violating the condition).

Because D.M.P.'s term of community custody has expired, he is no longer

No. 69891-5-I/13

subject to the condition of community custody challenged herein. Accordingly, we determine that D.M.P.'s challenge is moot and decline to address it.

Affirmed.

We concur: