264 P.3d 284 (2011)
164 Wn. App. 392
STATE of Washington, Respondent,
v.
Thomas Melvin FENWICK, Appellant.
No. 40542-3-II.
Court of Appeals of Washington, Division 2.
October 18, 2011.
*286 Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Sara I. Beigh, Lewis County Prosecutors Office, Chehalis, WA, for Respondent.
JOHANSON, J.
¶ 1 Thomas M. Fenwick appeals his convictions for first degree unlawful possession of a firearm and driving under the influence. He argues for the first time on appeal that under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search of his car incident to his arrest was unconstitutional. He also claims that his trial counsel was ineffective for Failing to move to suppress the evidence before trial. We affirm.

FACTS
¶ 2 Around 1:00 AM on December 12, 2009, Washington State Patrol Trooper Joshua Valek was on patrol when he observed a car drifting between lanes on the roadway. Trooper Valek stopped the car and contacted the driver, who he later identified as Fenwick. Notably, a passenger was also in the car.
¶ 3 Trooper Valek explained to Fenwick the reason for the stop; Fenwick acknowledged that he was all over the roadway and added that he had not slept in five days. While talking to Fenwick, Trooper Valek observed that he appeared nervous; he was rocking back and forth and making jerky movements with his hands. Fenwick also had slurred speech and bloodshot eyes.
¶ 4 Believing Fenwick to be under the influence, Trooper Valek asked Fenwick to perform voluntary sobriety tests. Fenwick agreed to perform the tests and turned off his car, but he did not immediately exit the car. Instead he sat in his car, looking around in a nervous manner. Trooper Valek again asked Fenwick to exit his car. Rather than complying, Fenwick started his car, put it in gear, and it began to move forward slowly. At this point, Trooper Valek pulled out his taser and ordered Fenwick to stop and turn off his car; Fenwick complied. Trooper Valek called for backup and ordered Fenwick to remain in his car.
¶ 5 When backup arrived, Trooper Valek told Fenwick to exit the car and handcuffed him. After Fenwick had calmed down, Trooper Valek removed the handcuffs so that Fenwick could perform sobriety tests. Based on the sobriety tests, Trooper Valek believed that Fenwick was under the influence of a drug and arrested him for driving under the influence.
¶ 6 Trooper Valek again handcuffed Fenwick, placed him in the back of a patrol car, and their read him Miranda[1] warnings. Fenwick said that The understood his rights and agreed to speak to Trooper Valek. Fenwick admitted that he injects methamphetamine and that he had needles in his car.
¶ 7 Trooper Valek searched Fenwick's car incident to his arrest "for evidence of the DUI crime." Verbatim Report of Proceedings at 69. He found drugs and a loaded Glock handgun partially underneath the driver's seat on the rear floorboard.
¶ 8 The State charged Fenwick with first degree unlawful possession of a firearm, possession of a controlled substancemethamphetamine, and driving under the influence. On March 16, 2010, the court held a CrR 3.5 hearing to determine whether statements that Fenwick made during the roadside investigation were admissible. Fenwick did not move to suppress the evidence seized from his vehicle at trial.
¶ 9 At trial, Trooper Valek testified that Fenwick's passenger was also arrested. He did not remember her charge, did not state when she was arrested, and did not otherwise indicate whether she was handcuffed during the search.
¶ 10 Trial began and concluded in March 2010. The jury found Fenwick guilty of first degree unlawful possession of a firearm and *287 driving under the influence. Fenwick appeals.

ANALYSIS

I. ISSUE PRESERVATION
¶ 11 Fenwick argues that Gant and its progeny require us to suppress the evidence obtained in the search of his car incident to his arrest. But first we must decide whether Fenwick may even raise this issue for the first time on appeal, as he failed to move at trial to suppress the evidence seized. We review issues of constitutional interpretation and issue preservation de novo. State v. Robinson, 171 Wash.2d 292, 301, 304-06, 253 P.3d 84 (2011).

A. Robinson
¶ 12 The general rule is that a party must raise an issue at trial to preserve the issue for appeal, unless the party can show the presence of a "`manifest error affecting a constitutional right.'" Robinson, 171 Wash.2d at 304, 253 P.3d 84 (quoting State v. Kirwin, 165 Wash.2d 818, 823, 203 P.3d 1044 (2009)). The purpose of issue preservation is to "encourage `the efficient use of judicial resources' ... by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." Robinson, 171 Wash.2d at 304-05, 253 P.3d 84 (quoting State v. Scott, 110 Wash.2d 682, 685, 757 P.2d 492 (1988)). But "in a narrow class of cases," insisting on issue preservation "would be counterproductive to the goal of judicial efficiency." Robinson, 171 Wash.2d at 305, 253 P.3d 84. Accordingly, our Supreme Court has held that issue preservation does not apply when the following four conditions are met:
(1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and (4) the defendant's trial was completed prior to the new interpretation.
Robinson, 171 Wash.2d at 305, 253 P.3d 84. The rationale underpinning this exception is that a "contrary rule would reward the criminal defendant bringing a meritless motion to suppress evidence that is clearly barred by binding precedent while punishing the criminal defendant who, in reliance on that binding precedent, declined to bring the meritless motion." Robinson, 171 Wash.2d at 305, 253 P.3d 84.
¶ 13 Because Fenwick cannot meet the fourth condition, the Robinson exception does not apply. Both Gant and the first Washington case interpreting Gant under our constitution, State v. Patton, 167 Wash.2d 379, 384, 219 P.3d 651 (2009), were decided in 2009. Fenwick's trial began and ended in March 2010. Because his trial was completed after Gant and Patton were decided, Fenwick does not fall within the scope of the "narrow class of cases" identified in Robinson as qualifying for an exception to the general rule of issue preservation. Robinson, 171 Wash.2d at 305, 253 P.3d 84. Fenwick can, however, still raise the issue for the first time on appeal if he can show that failing to suppress the evidence was a manifest error affecting a constitutional right. RAP 2.5(a)(3).

B. Manifest Error
¶ 14 An issue generally cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). But "`the constitutional error exception is not intended to afford criminal defendants a means for obtaining new trials whenever they can identify a constitutional issue not litigated below.'" State v. Kirkpatrick, 160 Wash.2d 873, 879, 161 P.3d 990 (2007) (quoting Scott, 110 Wash.2d at 687, 757 P.2d 492). "We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." State v. Powell, 166 Wash.2d 73, 82, 206 P.3d 321 (2009).
¶ 15 We employ a two-part analysis to determine whether an error is a "manifest error affecting a constitutional right" under RAP 2.5(a)(3). Kirkpatrick, 160 Wash.2d at 880, 161 P.3d 990. First, we determine whether the alleged error is truly constitutional. Kirkpatrick, 160 Wash.2d at 879, 161 *288 P.3d 990. Fenwick alleges that the State violated his right to privacy under article I, section 7, which is constitutional in nature.
¶ 16 Second, we determine whether the alleged error is "manifest." Kirkpatrick, 160 Wash.2d at 880, 161 P.3d 990. "`Manifest in RAP 2.5(a)(3) requires a showing of actual prejudice.'" State v. O'Hara, 167 Wash.2d 91, 99, 217 P.3d 756 (2009) (quoting State v. Kirkman, 159 Wash.2d 918, 935, 155 P.3d 125 (2007)). To demonstrate actual prejudice, there must be a "`plausible showing by the [appellant] that the asserted error had practical and identifiable consequence in the trial of the case.'" O'Hara, 167 Wash.2d at 99, 217 P.3d 756 (quoting Kirkman, 159 Wash.2d at 935, 155 P.3d 125). In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim. O'Hara, 167 Wash.2d at 99, 217 P.3d 756. "`If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'"[2]O'Hara, 167 Wash.2d at 99, 217 P.3d 756 (quoting McFarland, 127 Wash.2d at 333, 899 P.2d 1251).
¶ 17 Fenwick argues that the search was unlawful under both the Fourth Amendment of the United States Constitution and article 1, section 7 of our constitution. "When a party claims both state and federal constitutional violations, we turn first to our state constitution." Patton, 167 Wash.2d at 385, 219 P.3d 651 (citing State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996)).
¶ 18 Article I, section 7 states: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." A valid warrant, subject to a few jealously guarded exceptions, establishes the requisite "authority of law." State v. Afana, 169 Wash.2d 169, 177, 233 P.3d 879 (2010) (quoting WASH. CONST. art. I, § 7). One such exception is a search incident to arrest. Recently, this exception has come under much scrutiny, first with Gant, and then with a series of opinions from our Supreme Court.
¶ 19 In Gant, the United States Supreme Court observed that the search incident to arrest exception had come to be regarded as "`a police entitlement rather than as an exception justified by the twin rationales of Chimel [v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)].'" Gant, 129 S.Ct. at 1718. In a course correction, Gant held that a search incident to the arrest of a recent vehicle occupant under the Fourth Amendment may be justified on three separate basesofficer safety, preserving evidence, or searching for evidence of the crime of arrest. Gant, 129 S.Ct. at 1716.
¶ 20 Article I, section 7 requires "no less" than the Fourth Amendment. Patton, 167 Wash.2d at 394, 219 P.3d 651. Our Supreme Court in Patton held that, in Washington, a search incident to arrest is limited to situations where there is "a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search."[3]Patton, 167 *289 Wash.2d at 395, 219 P.3d 651; see State v. Valdez, 167 Wash.2d 761, 777, 224 P.3d 751 (2009).
¶ 21 Since Patton, several Washington courts have considered whether a defendant has shown a manifest error affecting a constitutional right on a Gant issue. See, e.g., State v. Abuan, 161 Wash.App. 135, 146, 257 P.3d 1 (2011); State v. Swetz, 160 Wash.App. 122, 127, 247 P.3d 802 (2011), petition for review filed, No. 85717-2 (Wash. Mar. 11, 2011); State v. Harris, 154 Wash.App. 87, 94, 224 P.3d 830 (2010). In Swetz, the defendant did not challenge a warrantless search incident to his arrest because Patton and Valdez were decided after his convictions. Swetz, 160 Wash.App. at 127, 247 P.3d 802. Applying the manifest error test, however, The Swetz court held that the defendant showed the requisite prejudice to raise the issue for the first time on appeal. Swetz, 160 Wash. App. at 127, 247 P.3d 802. The court reasoned that the error was manifest because (1) the search exceeded its permissible scope under arrest under article 1, section 7; and (2) nothing in the record otherwise justified the warrantless search incident to arrest. Swetz, 160 Wash.App. at 127-28, 247 P.3d 802. The court reasoned that the search under review was unlawful because the defendant, the sole car occupant, was handcuffed in the back of the patrol car before the search. Swetz, 160 Wash.App. at 132, 247 P.3d 802.
¶ 22 Like in Swetz, the defendant in Abuan did not challenge the warrantless search at trial because our Supreme Court decided Patton and Valdez after his trial and convictions. Abuan, Wn.App. at 148. The Abuan court found a manifest error affecting a constitutional right and held that the defendant did not waive a challenge to the warrantless search. Abuan, 161 Wash.App. at 149, 257 P.3d 1 The actual prejudice establishing a manifest error in Abuan was (1) the illegality of the search incident to arrest under article 1, section 7; and (2) the inapplicability of any other exception to the warrant requirement. Abuan, 161 Wash.App. at 149, 257 P.3d 1. The search incident to arrest was illegal under article 1, section 7 because the record contained no evidence evincing a threat to officer safety and preservation of evidence. Abuan, 161 Wash.App. at 147, 257 P.3d 1. This is because both the defendant and the passenger, who was also arrested, were secured in the back of a patrol car before officers searched the car incident to the driver's arrest. Abuan, 161 Wash.App. at 152, 257 P.3d 1.
¶ 23 This case is distinguishable from Swetz and Abuan because Fenwick had a passenger in his car whose location and restraint at the time that Trooper Valek searched the car is indiscernible from the record. Although we can determine from the record that Fenwick was secured in the back of a patrol car before Trooper Valek searched his car, we cannot determine whether Fenwick's passenger was also secured. Trooper Valek testified that the passenger was arrested, but the record is silent whether she was arrested and secured before or after the car search. The question, then, is whether the status of Fenwick's passenger affects our ability to determine that officer safety or destruction of evidence was not at issue.
¶ 24 Afana considered a similar issue, but not in the manifest error context because Afana moved to suppress evidence in a pretrial suppression hearing. There, an officer stopped a car and arrested the passenger, Bergeron, for a misdemeanor trespass warrant. Afana, 169 Wash.2d at 174, 233 P.3d 879. The record said only that Bergeron was placed under arrest and did not indicate whether the officer employed any protective measures, such as handcuffing and placing the passenger in the patrol car. Afana, 169 Wash.2d at 174 n. 1, 233 P.3d 879. The officer then asked the driver, Afana, to exit the car. Afana, 169 Wash.2d at 174, 233 P.3d 879. When he complied, the officer proceeded to search the car's interior, finding evidence of drugs. He then arrested Afana. Afana, 169 Wash.2d at 174, 233 P.3d 879. At Afana's pretrial suppression hearing, Afana sought to suppress the items found in his car, albeit not on the specific ground that the search incident to Bergeron's arrest was illegal. Afana 169 Wash.2d at 175, 233 P.3d 879. While *290 Afana's case was pending direct appeal, the United States Supreme Court issued its decision in Gant. Afana, 169 Wash.2d at 175, 233 P.3d 879.
¶ 25 The Afana court held that the search was unlawful under Gant because the officer had no reason to believe that the car in which Bergeron was a passenger contained evidence of trespass. Afana, 169 Wash.2d at 178, 233 P.3d 879. Nor did the officer have reason to believe that Bergeron, as the arrestee, posed a safety risk since she "was already in custody at the time of the search." Afana, 169 Wash.2d at 178, 233 P.3d 879. In a footnote, the court stated:
Here, the record does not reveal Bergeron's precise situation at the time of the search, only that she was "under arrest." The State has not, however, argued that Bergeron was unsecured at the time of the search or that she posed a safety risk, ... and it is the State's burden to show that the automobile search incident to arrest exception applies.
Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879. The court also observed that Afana being unsecured at the time of the search did not justify the search. Afana, 169 Wash.2d at 178, 233 P.3d 879. The court reasoned:
This is so because he was not under arrest at the time the search was conducted and, as we have observed, the United States Supreme Court said in Gant that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search."
Afana, 169 Wash.2d at 178-79, 233 P.3d 879 (quoting Gant, 129 S.Ct. at 1723).
¶ 26 Afana is distinguishable from the facts here. Afana moved to suppress the evidence before trial. Afana, 169 Wash.2d at 175, 233 P.3d 879. Accordingly, the Afana court did not review for manifest error but instead observed that, during a suppression hearing, the State has the burden to show that the search incident to arrest exception applies. Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879. In Afana, the State failed to meet this burden because it did not argue that Bergeron was unsecured at the time of the search or that she posed a safety risk. Afana, 169 Wash.2d at 178 n. 4, 233 P.3d 879. Thus, despite the unclear record with regard to Bergeron's precise situation, the court did not find any exigencies that would have justified a search incident to arrest because the State did not show them.
¶ 27 Here, Fenwick has the burden to show manifest error because he did not move to suppress the evidence before trial. The record states that Trooper Valek handcuffed and secured Fenwick in a patrol car before he searched Fenwick's car incident to his arrest; however, Fenwick's passenger's location during the search is indiscernible from the record because the record was not developed during a suppression hearing. Without certainty that his passenger was secured before the search, and thus did not pose a threat to the officers or the destruction of evidence, we cannot fairly decide whether Trooper Valek's search of Fenwick's car incident to his arrest violated article 1, section 7. A defendant cannot show prejudice where the record does not contain the facts necessary to adjudicate the claimed error. McFarland, 127 Wash.2d at 333, 899 P.2d 1251.
¶ 28 Because Fenwick failed to request a CrR 3.6 suppression hearing, the State did not have an opportunity to fully develop the record and show how the warrantless search was lawful. The record does not indicate whether the trial court would have granted the motion, and Fenwick thus cannot show prejudice. McFarland, 127 Wash.2d at 334, 899 P.2d 1251. We hold that Fenwick fails to show a manifest error affecting a constitutional right, therefore, he cannot raise the suppression issue for the first time on appeal. RAP 2.5(a).

II. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 29 Fenwick next argues that his trial counsel was ineffective for failing to move to suppress the evidence found inside his car in the search incident to his arrest. To prove ineffective assistance of counsel, Fenwick must show:
(1) defense counsel's representation was deficient i.e., it fell below an objective standard of reasonableness based on consideration *291 of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.
McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251. A failure to make either showing terminates review of the claim. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). "Where, as here, the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record." McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
¶ 30 As this is a direct appeal, we must decide this issue based on the record before us. For the reasons we stated above regarding manifest error, Fenwick cannot show on this record that the trial court would have likely suppressed the evidence seized in his car. He fails to show prejudice as a result of ineffective counsel.
¶ 31 We affirm.
We concur: VAN DEREN, J., and PENOYAR, C.J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] We note that, although we follow the manifest error test outlined in McFarland, other courts have applied pure waiver in this context. State v. Mierz, 72 Wash.App. 783, 866 P.2d 65 (1994) (Mierz I), aff'd, 127 Wash.2d 460, 468, 901 P.2d 286 (1995). We find the manifest error test to be the status of Washington law because the source of the pure waiver rule cited and relied on in Mierz I and Mierz II predates RAP 2.5(a). See Robinson, 171 Wash.2d 292, 253 P.3d 84; RAP 2.5(a).
[3] Gant also holds that an officer may conduct a vehicle search incident to a lawful arrest when it is "`reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Gant, 129 S.Ct. at 1719 (quoting Thornton v. United States, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)). Unclear is whether this rule withstands article 1, section 7 scrutiny. Washington courts have limited the search incident to arrest exception to situations where issues of either officer safety or preserving evidence justify the officer in conducting a warrantless search. See Patton, 167 Wash.2d at 394-95, 219 P.3d 651; State v. Valdez, 167 Wash.2d 761, 777, 224 P.3d 751 (2009); State v. Chesley, 158 Wash.App. 36, 45, 239 P.3d 1160 (2010); State v. Swetz, 160 Wash.App. 122, 132, 247 P.3d 802 (2011). But we note that even if we applied the rule, Fenwick would still be unable to show a manifest error affecting a constitutional right. This is because Trooper Valek arrested Fenwick for driving under the influence and, based on Fenwick's statements and odd behavior, had reason to believe that his car contained evidence of drug use.