IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 73063-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JASON RAMOS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 25, 2016 |

SPEARMAN, J. — Jason Ramos was convicted of two counts of first degree robbery, one count as a principal and one as an accomplice, and one count of second degree assault. He appeals, claiming that there was insufficient evidence to support his conviction for accomplice liability. We disagree and affirm.

## FACTS

On October 31, 2013, Neal Blum and Jarvis Capucion were drinking beer on some steps near the Mt. Baker transit center when they heard a car alarm go off. Two men, later identified as Ayman Ibrahim and Jason Ramos, came running down the stairs. Blum stood up to let them pass, but Ibrahim stopped to speak with him while Ramos continued down the stairs past Capucion. Ibrahim attempted to engage Blum in conversation and shake his hand, in which hand Ibrahim carried an unidentified object concealed with a bandage. During this interaction with Blum, Ibrahim and Ramos spoke to each other in what sounded

like Spanish. At one point Ibrahim called out and Ramos came back up the stairs to Capucion. He grabbed Capucion's backpack and punched him in the face, knocking him to the ground. When Capucion got up and tried to retrieve his bag, the two exchanged blows. Meanwhile Ibrahim grabbed Blum, took his backpack, and removed a knife from Blum's pocket.

Blum heard Capucion cry out for help. He turned to see Ramos making sharp stabbing motions toward Capucion's torso. Ibrahim started down the stairs toward Ramos and Capucion. Blum took out his other knife and went after him. As Blum caught up to Ibrahim on the stairs, he grabbed Ibrahim and the two stumbled into the bushes. Blum cut Ibrahim in the neck with his knife and stabbed him multiple times in the right side. Blum then ran down the stairs to help Capucion. He knocked Ramos's knife away and stabbed him in the left side. When Ramos continued to fight, Blum cut his throat and stabbed him in the right side. Ibrahim came down the stairs and approached Blum, but then backed off. Ramos got up again and challenged Blum, but left after Blum brandished his knife and threatened to kill him if he didn't leave. Ramos and Ibrahim walked away as Blum called 911. Capucion had been stabbed multiple times in the chest and suffered serious injuries to his spleen and other organs. Blum was not injured in the confrontation.

The police apprehended Ibrahim and Ramos about a block away, near Martin Luther King, Jr. Way and S. Hanford Street. The two were arrested and taken to Harborview Hospital for treatment of their injuries. One backpack was recovered from Ramos and another was found on the stairwell; the backpacks

2

were later identified as belonging to Blum and Capucion. Ramos was released from custody until charges were filed on February 21, 2014. He was subsequently rearrested.

Ramos was charged with two counts of robbery in the first degree and one count of assault in the first degree. Prior to Ramos's trial, Ibrahim pleaded guilty to one count of first degree robbery with a deadly weapon enhancement. Ramos called Ibrahim as a witness at his trial. He testified that he and Ramos knew each other but denied robbing Blum. The jury found Ramos guilty as charged. He was sentenced to 169 months. Ramos appeals only his conviction for robbery in the first degree against Blum.

## DISCUSSION

Ramos challenges the sufficiency of the evidence supporting his conviction as an accomplice to Ibrahim's first degree robbery of Blum. He claims the State failed to prove that he knew that Ibrahim was going to rob Blum and that he aided or stood ready to aid in the commission of that crime. Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found any disputed elements proved beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences must be interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. RCW 9A.56.190. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Id.

A person is an accomplice of another person in the commission of a crime if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it; or
> (b) His or her conduct is expressly declared by law to establish his or her complicity.

RCW 9A.08.020(3)(a). In order to convict a defendant as an accomplice, there must be evidence that he was "ready to assist" or intended to encourage the conduct of his co-participant; mere presence at the scene is insufficient. State v. Lozier, 32 Wn. App. 376, 377, 647 P.2d 535 (1982) (quoting In re Wilson, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979)). An accomplice aids or agrees to aid another person in the commission of a crime by associating himself with the crime, participating in it and seeking to make it succeed. State v. J-R Distributors, Inc., 82 Wn.2d 584, 593, 512 P.2d 1049 (1973). An accomplice need not participate in each element of the crime or share the same mental state as the

4

principal; he need only intend to facilitate the crime's commission by providing assistance through presence or action. State v. Roberts, 142 Wn.2d 471, 512, 14 P.3d 713 (2000). Mere presence and knowledge that a crime is going to be committed is insufficient to establish accomplice liability. Wilson, 91 Wn.2d at 491.

Ramos does not dispute that he robbed and assaulted Capucion. Nor does he appear to dispute that at the same time he did so, a short distance away, Ibrahim robbed and assaulted Blum. But he claims the evidence is insufficient to establish he knew what Ibrahim was about to do and that he aided or agreed to aid him in doing it. Ramos argues that the State presented no evidence of any interactions between him and Ibrahim prior to the robberies or evidence that the two men planned to simultaneously commit the crimes. He also argues that there was no evidence that his conduct aided Ibrahim in robbing Capucion. Ramos contends the sole evidence relied upon by the State was the purported Spanish utterance by Ibrahim immediately prior to the robberies. Id. The arguments are without merit.

The record shows that Ramos and Ibrahim were together when they came down the stairs and encountered Blum and Capucion. Ibrahim stopped to confront Blum and yelled something in Spanish to Ramos, after which, Ramos came back to face Capucion. When Ibrahim yelled in Spanish again, Ramos immediately punched Capucion in the face and attempted to take his backpack. At the same time, Ibrahim took Blum's backpack from him. After the robberies, Ramos and Ibrahim left the area together and were still together a block away

when apprehended by the police. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's conclusion that Ramos was acting in concert with Ibrahim and that he aided Ibrahim in the robbery of Blum.

Ramos argues that Ibrahim's testimony demonstrated that they were not together but just happened to be in the same place committing robberies at the same time. But it was within the jury's province to credit or discredit Ibrahim's claim that the simultaneous robberies were mere coincidence. We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). We do not second guess the jury's determinations on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Accordingly, we reject Ramos's claim of insufficiency.

In his reply brief, Ramos asks that no costs be awarded on appeal. Under RCW 10.73.160(1), appellate courts "may require an adult offender convicted of an offense to pay appellate costs." This court may consider the issue of appellate costs in a criminal case during the course of appellate review when the appellant raises the issue preemptively. State v. Sinclair, ___ P.3d ___, 2016 WL 393719 at *5-6 (2016).

Generally, issues raised in a reply brief, including requests for fees and costs, are too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But Sinclair, the case Ramos relies on as authority for his request, was decided after Ramos filed his opening

brief. We will consider Ramos' request and if the State chooses to seek costs, it may respond when it submits a cost bill.[1]

Statement of Additional Grounds (SAG)

Ramos submits a number of arguments in his statement of additional grounds. A defendant may submit a pro se statement of additional grounds for review pursuant to RAP 10.10. Such statement must "'inform the court of the nature and occurrence of [the] alleged errors.'" State v. Meneses, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009). Ramos argues that his constitutional right to a speedy trial was violated by his original counsel's discovery of a conflict the day before he was scheduled to appear at an omnibus hearing a few weeks before trial. He complains that the court allowed his attorney to withdraw and that he was forced to accept a new attorney which caused a delay of his trial for over nine months.

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. The state supreme court has found that the state constitutional analysis under the state constitution is substantially the same as the analysis under the U.S. Constitution; the state constitution does not afford greater rights to the defendant. State v. Iniguez, 167 Wn.2d 273, 289, 213 P.2d 768 (2009).

---

[1] We recognize that absent direction from this court, the commissioner has no discretion but to award costs to the State if requested. RAP 14.2. In that event, Ramos may file a motion to modify pursuant to RAP 17.7.

The United States Supreme Court employs a balancing test that examines the conduct of both the State and the defendant to determine whether speedy trial rights have been denied. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L. Ed. 2d 101 (1972). The analysis is "'fact-specific' and 'necessarily dependent upon the peculiar circumstances of the case.'" Iniguez. 167 Wn.2d at 292 (quoting Barker at 530-31). Among the non-exclusive factors to be considered include the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" State v. Ollivier, 178 Wn.2d 813, 827, 312 P.3d 1 (2013) (quoting Barker at 530).

As a threshold to the Barker inquiry, a defendant must show that the length of the delay crossed a line from ordinary to presumptively prejudicial. Barker, 407 U.S. at 530. Whether a delay is presumptively prejudicial is also a fact-specific inquiry dependent on the circumstances of each case. Iniguez, 167 Wn.2d at 291. Based on a survey of cases from other jurisdictions, prejudice may be presumed for delays between eight months to a year. Id. at 290.

Here, less than 10 months passed between Ramos's first court appearance and December 15, 2014, the day trial commenced. A minimal delay given the gravity of the charges and the consequences in the event of conviction. Ramos points out that his trial date was continued eight times, but it appears that only one was attributable to the withdrawal of his attorney. Although the record is unclear, it appears that the remaining continuances were related to discovery matters regarding witness interviews and the collection and analysis of DNA

8

evidence. Nor does Ramos identify any specific prejudice that he suffered as a result of the delay. He does not allege that any evidence or testimony was lost because of the delay in beginning his trial. We conclude there was no violation of Ramos's right to a speedy trial.

Next, Ramos argues that there was no probable cause for his arrest and seeks reversal of his conviction, dismissal of the charges or a new trial. But it is unclear if he is contesting the validity of his arrest immediately following the incident or his later arrest following the filing of charges. If the former, we note that because Ramos did not move to suppress any seized evidence pursuant to CrR 3.6, the record is undeveloped as to the circumstances of the arrest, including all the information available to the arresting officers at the time of the arrest. Thus, we are unable to consider this claim. See State v. Fenwick, 164 Wn. App. 392, 405, 264 P.3d 284 (2011) (where defendant failed to request a suppression hearing, the State did not have opportunity to fully develop the record and show how the warrantless search was lawful). If the latter, Ramos does not assert that any evidence was seized from him following that arrest. In the absence of a claim that any unlawfully seized evidence was used against him at trial, Ramos cannot show he suffered any prejudice as a result of the alleged unlawful seizure. Thus, he is unable to show that he is entitled to the relief he seeks.

Finally, Ramos argues that he was subject to an unreasonable search and seizure for being handcuffed to the bed while he was in the hospital. He also argues that criminal charges should have been brought against Blum as

well. Neither of these statements articulate any basis for relief from his conviction and sentence.[2]

Affirm.

WE CONCUR:

Spelman, J.

Leach, J.

Trickey, ACJ

_____

[2] Ramos also argues that his "mere presence with or near Mr. Ibrahim was not sufficient to justify the officer's actions to seize and arrest" him. SAG at 3. This argument was briefed on appeal; we do not revisit it here.