IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　v.<br><br>SALAH A. MAHAMUD,<br><br>　　　　　　　　Appellant. | No. 78482-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 4, 2019 |

CHUN, J. — A jury convicted Salah Mahamud of rape of a child in the second degree. On appeal, Mahamud contends the trial court erred in admitting prejudicial testimony and hearsay, and improperly imposed a sentencing provision barring him from contact with minors without making exception for any of his possible future children. We affirm.

## I. BACKGROUND

According to A.M., Mahamud raped her at his apartment. The next morning, at the apartment, A.M. told her close friend T.M. about the incident.

When A.M. returned home, her mother opened the door, let her into the home, and the two walked into the living room. A.M.'s mother shortly left the room and came back to find A.M. holding a knife to her throat. At her mother's urging, A.M.'s sister called 911, and an ambulance took A.M. to the hospital.

A.M. told emergency room personnel that "on the first night when she was staying with [T.M.], [T.M.]'s boyfriend's uncle, who is reportedly a 22-year-old adult, sexually assaulted her."[1] Emergency room personnel helped schedule a follow-up appointment with a sexual assault nurse examiner. A.M. also told the sexual assault nurse examiner that she was raped.

Police collected and submitted A.M.'s clothing from the night of the rape to the Washington State Patrol Crime Lab. Sperm cells on A.M's underwear matched Mahamud's DNA. A.M. also identified Mahamud as her attacker in a police photo montage.

The State charged Mahamud with rape of a child in the second degree. The jury convicted Mahamud as charged. As a part of his sentence, the trial court prohibited Mahamud from having direct or indirect contact with minors. Mahamud appeals his conviction and the sentencing provision.

## II. ANALYSIS

A. Evidentiary Issues

1. A.M's Threats of Self-Harm

Mahamud argues the trial court erred by admitting evidence that A.M. held a knife to her throat before being taken to the hospital. Mahamud contends this evidence prejudicially generated sympathy for A.M. The State argues Mahamud did not properly raise this issue to the trial court and that the evidence is relevant and non-prejudicial. We conclude that the asserted error cannot be raised for the first time on appeal.

---

[1] The record does not show any actual relation between Mahamud and T.M.'s boyfriend.

2

"An issue generally cannot be raised for the first time on appeal unless it is a manifest error affecting a constitutional right." State v. Fenwick, 164 Wn. App. 392, 399, 264 P.3d 284 (2011) (internal quotation marks and citation omitted); RAP 2.5(a)(3). We determine whether an error constitutes a manifest error affecting a constitutional right through a two-part analysis:

> First, we determine whether the alleged error is truly constitutional. . . . Second, we determine whether the alleged error is "manifest." . . . "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. . . . To demonstrate actual prejudice, there must be a plausible showing by the appellant that the asserted error had practical and identifiable consequence in the trial of the case.

Fenwick, 164 Wn. App. at 399-400 (internal quotations marks and citations omitted). Evidentiary errors are not typically of a constitutional magnitude. State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009).

At trial, Mahamud did not object to introduction of testimony that A.M. held a knife to her throat after arriving home.[2] Because Mahamud claims erroneous admission of evidence under ER 401 and ER 403, the asserted error is not of a constitutional magnitude.

Additionally, even if the asserted error is constitutional, it is not manifest. "The admission of evidence on an uncontested matter is not prejudicial error." Powell, 166 Wn.2d at 84 (internal quotation marks and citation omitted). In Powell, the defense agreed that the State could introduce testimony at trial

---

[2] Mahamud, the State, and the trial court discussed whether the fact that A.M. had a prior history of cutting would be admissible. The trial court concluded the defense would be allowed to elicit such evidence if, as expected, the State chose to elicit testimony that showed A.M. held a knife to her throat and threatened to kill herself shortly after arriving home. The State made clear its intention to elicit testimony that A.M. held a knife to her throat and threatened to kill herself, and Mahamud made no objection in limine or at trial.

regarding the defendant's drug use on the day of his attempted burglary. 166 Wn.2d at 84. Instead of arguing the testimony was prejudicial, the defense argued the witness at issue was not credible. Powell, 166 Wn.2d at 84. On appeal, the defense argued for the first time that this evidence prejudiced him; but because no objection as to prejudicial effect was made at trial, the court concluded the evidence's admission was an uncontested matter and thus not prejudicial. Powell, 166 Wn.2d at 85. The court further concluded that the error was not manifest because the testimony had no practical or identifiable consequences on the outcome of the trial because ample evidence supported the jury's guilty verdict. Powell, 166 Wn.2d at 85.

Here, as in Powell, Mahamud agreed the State could introduce testimony that A.M. held a knife to her throat before being sent to the hospital. But he sought to elicit testimony that A.M. had a prior history of cutting. Instead of arguing the testimony was prejudicial, Mahamud used the testimony to attack A.M.'s credibility. Because Mahamud did not object to this testimony's prejudicial effect at trial, the evidence's admission was an uncontested matter. And ultimately, Mahamud does not show how the testimony had practical or identifiable consequences on the outcome of the trial; ample evidence, such as A.M.'s testimonial identification of Mahamud as her rapist, her identification of Mahamud as her rapist to emergency room personnel, her statement to the sexual assault nurse examiner that she was raped, and presence of Mahamud's sperm cells on her underwear, supported the jury's guilty verdict. Thus, any error was not manifest.

Because Mahamud did not properly preserve his objection and any alleged error is not a manifest error affecting a constitutional right, he cannot raise the issue for the first time on appeal.

2. Medical Diagnosis Hearsay Exception

Mahamud argues the trial court erred when it admitted statements A.M. made to the nurse at Valley Medical Center, because they did not fall under the hearsay exception for medical diagnosis and treatment. The State argues the trial court properly admitted the testimony because it was reasonably pertinent to A.M's medical diagnosis. We agree with the State.

We review evidentiary rulings for abuse of discretion. State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

Hearsay is an out-of-court statement offered for the truth of the matter asserted. ER 801. Hearsay evidence is inadmissible unless an exception applies. ER 802. ER 803(a)(4) allows admission of hearsay statements that are made for the purpose of or are reasonably pertinent to medical diagnosis or treatment. A party demonstrates that a statement is reasonably pertinent to medical diagnosis or treatment when "(1) the declarant's motive in making the statement is to promote treatment, and (2) the medical professional reasonably relied on the statement for purposes of treatment." State v. Williams, 137 Wn. App. 736, 746, 154 P.3d 322 (2007). Under this exception, a medical provider can typically relay a patient's statements relating to causation of their harm, but

5

generally not identifications of the perpetrators of their harm. State v. Fitzgerald, 39 Wn. App. 652, 658, 694 P.2d 1117 (1985); State v. Hopkins, 134 Wn. App. 780, 788, 142 P.3d 1104 (2006). But statements of identification may be admissible where the declarant is a child and they identify their abuser:

> Washington courts have determined that statements regarding the identity of [a child's] abuser are reasonably necessary to the child's medical treatment. The rationale is that a medical provider needs to know who abused a child in order to avoid sending the child back to the abusive relationship and to treat the child's psychological injury.

Hopkins, 134 Wn. App. at 788 (internal citation omitted).

Here, A.M. stated to the emergency room nurse that she was sexually assaulted by "[T.M.]'s boyfriend's uncle" on the first night that she stayed at his home. A.M. was a child of 13 years when she made her statement. Because A.M. was a child and the emergency room nurse needed to make sure she did not send A.M. back to her abuser, the nurse reasonably needed to know the abuser's identity. The nurse's testimony was admissible under ER 803(a)(4). The trial court did not abuse its discretion by admitting this testimony.

3. Cumulative Error

Finally, Mahamud alleges that even if no particular error warrants reversal on its own, the cumulative effect of the court's errors merits reversal.

Even where individual errors, "standing alone, might not be of sufficient gravity to constitute grounds for a new trial," the combined effect of the accumulation of errors may in some instances necessitate a new trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). But when a party fails to demonstrate any prejudicial error, we will not reverse a conviction. State v.

6

Stevens, 58 Wn. App. 478, 498, 794 P.2d 38 (1990). Here, Mahamud has not demonstrated any error by the trial court. Accordingly, we decline to reverse his conviction on a cumulative error theory.

B. No-Contact Order

For the first time on appeal, Mahamud moves to remand his sentence to the sentencing court and amend the sentencing provision that prohibits him from having contact with minors to allow for contact with his own potential children. The State argues Mahamud did not properly raise this issue at the sentencing phase and that his claim is not ripe. We agree.

Mahamud raised no similar objection to this sentencing provision at the sentencing hearing. Division Three recently outlined when we may review in instances such as this:

> For an objection to a community custody condition to be entitled to review for the first time on appeal, it must (1) be manifest constitutional error or a sentencing condition that . . . is "illegal or erroneous" as a matter of law, and (2) it must be ripe. If it is ineligible for review for one reason, we need not consider the other.

State v. Peters, No. 31755-2-III, slip op. at 5 (Wash. Ct. App. Sept. 17, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/317552_pub.pdf.

A preenforcement challenge to a community custody condition "is ripe for review on direct appeal if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." State v. Sanchez Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010) (internal quotation marks and citation omitted). However, "before refusing to review a preenforcement challenge on direct appeal, a reviewing court must also consider the hardship to

the offender. . . . [T]he risk of hardship will justify review before factual development if the challenged condition immediately restricts an offender's conduct upon release from prison." Peters, No. 31755-2-III, slip op. at 5 (internal citations omitted).

When reviewing whether a no-contact order with a defendant's own children is appropriate, we conduct a fact-based inquiry, weighing the State's compelling interest in preventing harm to children against the defendant's fundamental right to raise their children without State interference. See State v. Letourneau, 100 Wn. App. 424, 437-44, 997 P.2d 436 (2000); State v. Warren, 165 Wn.2d 17, 31-35, 195 P.3d 940 (2008). In conducting this inquiry, we will often consider whether the children were victims of the defendant's crime, whether they witnessed the defendant's crime, or whether they are of the same class or age as the victim of the defendant's crime. See State v. Ancira, 107 Wn. App. 650, 656, 27 P.3d 1246 (2001) (declining to impose a no-contact order between defendant and his children where children were not the victims of his crime); State v. Howard, 182 Wn. App. 91, 102, 328 P.3d 969 (2014) (weighing propriety of a no-contact order where defendant's children witnessed his crime); Letourneau, 100 Wn. App. at 442 (declining to impose a no-contact order between the defendant and her children because there was no evidence she was a pedophile or posed a danger of molesting her children).

The State has not yet acted to separate Mahamud from his children, as he has no children. Thus Mahamud's challenge to the condition constitutes a preenforcement challenge. Because Mahamud has no children, conducting a

8

review of the community custody condition as applied to him would require further factual development. As his claim requires further factual development, his preenforcement challenge is not yet ripe. Additionally, no risk of hardship justifying immediate review exists, as the challenged condition will not immediately restrict Mahamud's conduct upon his release from prison; no restriction will occur until after Mahamud has children. Because his claim is not ripe and there is no risk of hardship, we decline to consider the merits.

Affirmed.

_Chen, J._

WE CONCUR:

_Andrus, J._                    _Verellen, J._