IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of S.L.S., DOB: 05/31/2017<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>                Respondents,<br>v.<br><br>CALVIN TURNER,<br><br>                Appellant. | No. 79722-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br>FILED: January 21, 2020 |

CHUN, J. — The trial court terminated Calvin Turner's parental rights as to his daughter, S.L.S. In its termination order, the trial court incorporated by reference the findings of fact and conclusions of law from the underlying dependency order. Turner appeals the termination order, claiming the State failed to meet its evidentiary burden under RCW 13.34.180(1)(d)–(f) and RCW 13.34.190(1)(b), and claiming that the incorporation of the dependency order's findings of fact and conclusions of law violated due process. Substantial evidence supports the trial court's findings of fact. Further, any error resulting from the incorporation of the findings and conclusions from the dependency order is harmless beyond a reasonable doubt. Accordingly, we affirm.

## I. BACKGROUND

Turner is the father of S.L.S., who was born drug-affected. S.L.S. suffers from a number of medical and developmental needs, including an abnormality in her pituitary gland causing precocious puberty. S.L.S. has eye disorders and respiratory needs that require swallowing studies and thickeners added to any liquids she drinks.

Turner is a Vietnam War veteran and claims to suffer from Post-Traumatic Stress Disorder (PTSD) as a result of his service. He approximates he last received treatment for PTSD five years before the termination trial. At trial, Turner testified that he does not use heroin, but also said that he used heroin as recently as two weeks before the trial so that he could test positive for opiates and enter treatment. The trial court found Turner had a longstanding history of substance abuse that inhibited his ability to safely care for S.L.S.[1]

The Department of Social and Health Services (Department) removed S.L.S. from her parents' care shortly after her birth and placed her in foster care. The dependency trial court entered a dispositional order as to Turner on August 14, 2017.[2] Turner received notice of the dependency proceedings but did not appear. The dependency trial court entered the order by default. The dispositional order required Turner to (1) complete a drug and alcohol evaluation within 30 days of the date of referral, (2) schedule a parenting assessment within

---

[1] Turner does not challenge this finding, which renders it a verity on appeal. See State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[2] A dependency court will enter a dispositional order if, after a fact-finding hearing, a preponderance of the evidence shows the child is dependent. RCW 13.34.130.

30 days of the date of referral and complete it within 90 days of referral, (3) immediately begin 90 days of random urinalysis testing, and (4) establish paternity as soon as possible.

After a brief period in foster care, S.L.S.'s maternal grandmother assumed care of her. Shortly thereafter, the grandmother was murdered in her home. The perpetrators left S.L.S. alone in her crib. She remained there alone for three days before being discovered. As a result, S.L.S. suffers from PTSD in addition to her other medical and developmental needs. S.L.S. experiences PTSD symptoms such as night terrors and panic attacks and receives mental health therapy.

S.L.S. re-entered foster care after her grandmother's murder. Turner did not visit S.L.S. regularly throughout the dependency and believes his inconsistent visitations did not harm her. Social workers made multiple attempts to help Turner access services during the dependency period. Despite this assistance, Turner made little, if any, demonstrable effort towards accessing services.

The State filed a petition to terminate Turner's parental rights. Termination trial proceedings began November 27, 2018. The trial court terminated Turner's parental rights. In its termination order, the trial court adopted and incorporated by reference the findings and conclusions from the dependency order. Turner appeals.

## II. ANALYSIS

### A. Termination

Turner argues the State failed to present clear, cogent, and convincing evidence supporting the six elements of RCW 13.34.180(1) and did not prove by a preponderance of the evidence that termination serves his daughter's best interests. The State argues it met this burden. We agree with the State.

"Parents have a fundamental liberty interest in the care and welfare of their minor children." In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). To terminate the parent-child relationship, the State must satisfy two statutory prongs. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). First, the State must establish the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence.[3] RCW 13.34.190(1)(a)(i). Second, the State must show by a preponderance of

---

[3] The six elements are, in pertinent part:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home . . . .

RCW 13.34.180(1)(a)–(f).

4

the evidence that termination serves the best interests of the child. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010); RCW 13.34.190(1)(b). "Whether a termination is in the best interests of a child must be determined based upon the facts of each case." In re Dependency of A.M., 106 Wn. App. 123, 131, 22 P.3d 838 (2001). We place very strong reliance on a trial court's determination of what serves the child's best interests. In re Welfare of L.N.B.-L., 157 Wn. App. 215, 255, 237 P.3d 944 (2010).

We will uphold a trial court's termination findings of fact if they are "supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence." In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). "Clear, cogent and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be highly probable." In re Dependency of K.R., 128 Wn. App. 129, 141, 904 P.2d 1132 (1995) (internal quotation marks and citation omitted).

Turner argues the State failed to present clear, cogent, and convincing evidence sufficient to meet its burden under RCW 13.34.180(1)(d). Turner also argues that the State failed to satisfy RCW 13.34.180(1)(e) and (f), but he bases this argument wholly on his contention regarding subsection (d). Turner additionally argues the trial court erred in concluding that termination serves the

best interests of S.L.S., again primarily basing his argument on the claimed failure to meet subsection (d). We address each challenge in turn.

1. RCW 13.34.180(1)(d)

a. Provision of Services

Turner argues that the State did not meet its evidentiary burden under subsection (d) because the Department failed to offer him mental health services.

Parents must be offered all reasonably available and necessary services capable of correcting parental deficiencies within the near future. RCW 13.34.180(1)(d). Such services must be individually tailored to the needs of the parent. In re Dependency of D.L.B., 188 Wn. App. 905, 920, 355 P.3d 345 (2015).

But the Department need not provide additional services where the record establishes that such provision would be futile. In re Parental Rights to K.M.M., 186 Wn.2d 466, 483, 379 P.3d 75 (2016). Where a parent is unwilling or unable to make use of the services already provided, offering additional services would be futile. K.M.M., 186 Wn.2d at 483. Further, "[w]here the record establishes that the offer of services would be futile," we may affirm a trial court's conclusion that the Department offered all reasonable services. In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008); see also In re Dependency of M.-A.F.-S., 4 Wn. App. 2d 425, 461–62, 421 P.3d 482 (2018) (affirming satisfaction of RCW 13.34.180(1)(d) because substantial evidence showed additional offers of services would be futile).

6

Except for acknowledging paternity, which he did at trial, Turner failed to demonstrate participation in any services. He claimed to participate in chemical dependency services, but never provided documentation or allowed release of information showing participation in such services. Social workers attempted to assist Turner in accessing services, but he declined help. Turner claims to have made an effort to participate in a parenting assessment, but missed two appointments for assessments and never rescheduled. Additionally, while Turner now expresses a desire for the State to provide him with mental health services to treat PTSD, he stated at trial that he had previously attended treatment but quit because he knows how to handle his PTSD on his own.

In light of the foregoing, we conclude that substantial evidence supports the trial court's finding by clear, cogent, and convincing evidence that additional offers of services would have been futile.[4] Accordingly, substantial evidence establishes that the State proved that the Department offered or provided all reasonably available services capable of correcting Turner's parental deficiencies.[5]

---

[4] Turner cites In re Parental Rights to I.M.-M. to argue that a finding of futility is unsupportable where services are not appropriately tailored to the parent's needs. 196 Wn. App. 914, 925–26, 385 P.3d 268 (2016). But unlike the parent in I.M.-M., Turner has not made "notable efforts to engage in services and work with [his] providers." 196 Wn. App. at 925.

[5] Turner additionally argues the State improperly required he submit to chemical dependency services as a precondition to the State offering access to mental health services. Such a condition would violate the principle of In re Welfare of S.J., 162 Wn. App. 873, 881–82, 256 P.3d 470 (2011), where the court rejected a sequential approach to chemical dependency and mental health services in favor of an integrated approach. He points to the State's direct examination of social worker Holly Battersby:

[State:]    Is it typical for the Department to recommend parents comply with the substance abuse treatment and services before moving on to other court ordered services?

7

b. Express and Understandable Offer of Services

Turner argues the State did not "understandably" offer him services within the meaning of RCW 13.34.180(1)(d), because the Department did not provide him with time limits for his completion of services.

The Department must expressly and understandably offer services. RCW 13.34.180(1)(d). The Department must also specify time limits for each service plan. RCW 13.34.136(2)(b)(i). But Turner provides no authority to support his argument that the Department must repeatedly remind a parent of the time limits for the completion of services.

Here, the dependency order provided Turner with clear time limits for completion of services.[6] RCW 13.34.136(2)(b)(i) does not oblige the Department to remind Turner of the time limits. Nevertheless, the Department and social

---

. . .

[Battersby:] I've seen that so that that [sic] way the parent can then really focus on their—developing their parenting skills while they're sober.

[State]: If, hypothetically, the mother was under the influence or–or lacked sobriety, was continuing to use, would you expect the mother to make much progress in parent coaching, parent classes, a neuropsychological evaluation?

[Battersby:] She may make some progress but her substance use could also continue to impact her ability to make enough progress to be a safe parent.

Instead of saying that the State had made use of chemical dependency services a precondition to it offering Turner mental health services, Battersby merely opined as to her impression of what effect continued substance use can have on a parent's ability to remedy their deficiencies. Turner points to no other source for his claim that the State required a sequential approach or mandated chemical dependency services before mental health services.

[6] Turner claims the Department provided no time limit for engaging in services, but also concedes that the original dependency order provided Turner with time limits for all services except urinalysis testing.

8

workers, through letters and conversations, continually reminded Turner of the importance of completing services as soon as possible.[7] Social workers additionally explained how Turner could access such services, but he declined any help offered. Substantial evidence supports the trial court's conclusion that the State presented clear, cogent, and convincing evidence that the Department expressly and understandably offered services, with time limits as required by RCW 13.34.136(2)(b)(i).

2. RCW 13.34.180(1)(e) and (f)

Turner's argument that the State failed to satisfy RCW 13.34.180(1)(e) and (f) rests entirely on his assertion that the State failed to satisfy RCW 13.34.180(1)(d). But as discussed above, the trial court properly concluded that the State satisfied RCW 13.34.180(1)(d). Turner offers no additional argument as to why the State did not satisfy subsections (e) and (f). Thus we reject his challenges under subsections (e) and (f).

3. RCW 13.34.190(1)(b)

Turner's challenge to the trial court's conclusion that the State satisfied RCW 13.34.190(1)(b) also rests primarily on his assertion that the State failed to satisfy RCW 13.34.180(1)(d). He additionally contends that termination does not

---

[7] For example, at least five letters sent to Turner from the Department included the following admonition:

> Your failure to follow through with these services can delay and/or prevent reunification with [S.L.S.]. If you wish to parent [S.L.S.] it is imperative you participate in your services immediately, as your parental rights to [S.L.S.] could be terminated if you do not address the concerns that brought her into care.

serve S.L.S.'s best interests because it would permanently deprive her of the care and companionship of a sincerely loving father.

The fact that Turner genuinely loves S.L.S. does not compel the conclusion that reversing termination serves the child's best interests. Turner suffers from longstanding substance abuse issues and continues to use heroin. Besides establishing paternity, Turner has made little, if any, demonstrable progress towards completing court-ordered services. Turner is either unwilling or unable to acknowledge his child's special needs. Turner lives in the home where S.L.S.'s grandmother was murdered, and plans to have S.L.S. move into that home if we reversed termination. But it would not serve S.L.S.'s best interests to live in that home. At trial, the Court Appointed Special Advocate shared S.L.S.'s infant mental health specialist's opinion that returning to the home in which her grandmother was murdered could traumatize S.L.S. The Court Appointed Special Advocate observed that Turner lacks insight both into S.L.S.'s special needs and her general needs as an infant. From these facts, we conclude that substantial evidence supports the trial court's finding that termination of Turner's parental rights serves his daughter's best interests.

B. Incorporation of Dependency Order Findings of Fact and Conclusions of Law

Turner argues the trial court wrongfully incorporated the findings of fact and conclusions of law from the default dependency hearing in violation of due process.[8] The State argues the trial court did not rely on the dependency order

---

[8] Turner raises this issue for the first time on appeal. He contends incorporation of the dependency order was a manifest constitutional error raising due process concerns, see RAP 2.5(a)(3), or in alternative, that because of his lawyer's failure to

in entering its decision to terminate Turner's parental rights, so the trial court did not enter the termination order in violation of due process. We conclude the trial court committed no error warranting reversal.

It remains unclear whether the trial court relied upon the dependency order as a means of concluding the State proved RCW 13.34.180(1)(d)–(f) and RCW 13.34.190(1)(b) by clear, cogent and convincing evidence, or as a means of concluding the State proved RCW 13.34.180(1)(a) and (b), which require a finding by clear and cogent evidence that the child has been found dependent and that the court entered a dispositional order under RCW 13.34.130.

If the trial court relied on the dependency order only as a means of concluding the State proved RCW 13.34.180(1)(a) and (b), then it committed no error. A termination court must conclude by clear, cogent, and convincing evidence only that the child was found dependent and that a dispositional order was entered to satisfy subsections (a) and (b); the underlying facts of the dependency order need not be re-proven at the termination trial. See K.R., 128 Wn.2d at 141–42. Thus, if the trial court incorporated the order to prove subsections (a) and (b), it would serve to prove only the fact of the dependency and dispositional order, and not to re-prove the allegations underlying dependency in a way that might otherwise implicate concerns about due process.

It is also possible that the trial court relied on the dependency order as a means of concluding the State proved RCW 13.34.180(1)(d)–(f) and

---

object, he received ineffective assistance of counsel. The State did not brief these issues. We proceed to the merits of Turner's claim of error.

11

RCW 13.34.190(1)(b) by clear, cogent, and convincing evidence. Turner asserts this would be constitutional error in violation of his due process rights, because his attorney had no opportunity to object to disputed information contained in the dependency findings and conclusions. Incorporation of dependency orders for such purposes could create due process concerns, as parents in termination hearings have statutory and constitutional rights to "receive a decision based solely on the evidence adduced at the hearing," and to "notice, open testimony, time to prepare and respond to charges . . ." See RCW 13.34.090(1); In re Dependency of A.M.M., 182 Wn. App. 776, 791, 332 P.3d 500 (2014) (internal quotation marks and citation omitted). Assuming, without deciding, that consideration of the dependency order for its facts was constitutional error, it was harmless.[9]

Constitutional error is harmless when it is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

---

[9] Turner argues this error would require remand for new termination proceedings, citing A.M.M. In A.M.M., the trial court terminated parental rights on the basis of the parent's "significant substance abuse, her unavailability and lack of follow through, and lack of knowledge regarding her children's developmental needs." 182 Wn. App. at 792 (emphasis omitted). But the parent never received notice "that her lack of knowledge regarding her children's developmental needs constituted a parental deficiency on which termination could be based." A.M.M., 182 Wn. App. at 791. We considered the lack of notice a violation of due process and remanded to the trial court with instructions to "consider whether termination is appropriate on the basis of the parental deficiencies of which [the parent] was given adequate notice." A.M.M., 182 Wn. App at 792–93. But here, the termination trial court did not explicitly base the termination order on facts of which Turner had no notice. Further, unlike the parent in A.M.M., Turner does not allege a failure to notify him of his parental deficiencies. Accordingly, application of harmless error analysis is an appropriate remedy for the claimed error.

As discussed above in Section A and below, even when disregarding the facts and conclusions of the dependency order, substantial evidence supports the termination order. Turner's daughter was found dependent and the trial court entered a dispositional order. See RCW 13.34.180(1)(a), (b). By the termination hearing, S.L.S. had been removed from her father's care for over six months. See RCW 13.34.180(1)(c). Besides establishing paternity, Turner failed to show any demonstrable progress in court-ordered services. See RCW 13.34.180(1)(d). Given Turner's lack of progress with services and lack of understanding as to his daughter's needs, it is unlikely that he will remedy his parental deficiencies in the near future. See RCW 13.34.180(1)(e). Given his parental deficiencies and lack of progress in remedying those deficiencies, continuation of the parent-child relationship diminishes his daughter's prospects for early integration into a permanent home. See RCW 13.34.180(1)(f). Finally, because Turner lacks insight into his daughter's needs, continues to use heroin, and has made little to no progress in court-ordered services, termination serves his daughter's best interests. See RCW 13.34.190(1)(b). Any claimed error from incorporation of the dependency order is therefore harmless beyond a reasonable doubt.[10]

---

[10] By implication of this conclusion, Turner's arguments against waiver—alternatively, manifest constitutional error and ineffective assistance of counsel—would fail if addressed. Manifest constitutional error requires a showing of actual prejudice. State v. Fenwick, 164 Wn. App. 392, 400, 264 P.3d 284 (2011). Ineffective assistance of counsel requires a showing of prejudice. In re Dependency of S.M.H., 128 Wn. App. 45, 61, 115 P.3d 990 (2005). Because incorporation of the dependency order was harmless beyond a reasonable doubt, incorporation caused no prejudice sufficient for an argument of manifest constitutional error or ineffective assistance of counsel.

Under either interpretation of the trial court's incorporation of the dependency order into its Findings of Fact and Conclusions of Law, we conclude that the trial court committed no error warranting reversal.

Affirmed.

_Chun, J._

WE CONCUR:

_Andrus, J._